**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Lieselotte C. MAERZ, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 2005.
Filed July 20, 2005.

John H. May, Lancaster, for appellant.

Alina L. Andreoli, Assistant District Attorney, Lancaster, for Commonwealth.

Before: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Lancaster County, which convicted Appellant of Summary Disorderly Conduct for unreasonable noise, 18 Pa. C.S.A. § 5503(a)(2). Appellant raises a sufficiency of the evidence challenge to her conviction. We vacate.

¶ 2 70 year old Lieselotte Maerz (Appellant) was cited for summary "disorderly conduct—unreasonable noise" for yelling across the street at her neighbor, Jay Skowronek, at 9:45 p.m. on a December night. Believing that Skowronek was flashing a light on her home, Appellant had come out onto her porch and shouted "[y]ou goddamn, motherfucking son of a bitch, what the hell are you doing, get that light off my house" at Skowronek, who was walking his dog at night with the aid of a flashlight.

¶ 3 Appellant immediately retreated into her home and phoned police to complain that Skowronek was drunk and shining a light on her house. The responding police officer interviewed both Appellant and Skowronek separately, and he credited Skowronek's account of his own conduct— that he had accidentally shone the flashlight on Appellant's home. Accordingly, the officer cited Appellant with disorderly conduct for her outburst.

¶ 4 Appellant pled not guilty to the citation, but was found guilty by the district justice, who fined her $50 and imposed court costs of $117. A trial *de novo* in the Court of Common Pleas also resulted in a guilty verdict. In its Pa.R.A.P.1925(a) opinion, the court reasoned:

> Based on these facts, the [Trial] Court found Maerz guilty of disorderly conduct. The [Trial] Court found that while in the public place of her neighborhood, Maerz yelled profanities across the street and in doing so recklessly created a risk of public inconvenience and annoyance.
>
> * * *
>
> The [Trial] Court found the Skowroneks to be credible and found that Maerz did yell profanities across the street in a loud voice creating an unreasonable noise. In defense, Maerz argued that because few neighbors were home that night, she did not have the intent to cause public inconvenience, annoyance

or alarm. However, the Skowroneks were clearly home and had the right not to be inconvenienced, annoyed, or alarmed because of a neighbor yelling profanities across the street. The [Trial] Court found that Maerz recklessly created the risk of public inconvenience and annoyance and did so by making an unreasonable noise.

Trial Court Opinion 10/28/04 at 2–3. The court reinstated fines and costs originally imposed by the district justice. This appeal followed.

¶ 5 Appellant raises one issue for our review, namely, whether her nighttime outburst directed at a neighbor across the street constituted "unreasonable noise" as proscribed by the Disorderly Conduct statute. We find that her outburst did not.

■ ¶ 6 In reviewing a sufficiency of the evidence claim, we must determine whether the evidence, and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Johnson,* 556 Pa. 216, 223, 727 A.2d 1089, 1092 (1999). While we are not free to substitute our view of the evidence for the factual findings of the trial court, we as an appellate court are authorized, indeed required, to use a plenary scope of review in determining the validity of the legal conclusions made by the trial court. *In the Interest of Barry W.,* 423 Pa.Super. 549, 621 A.2d 669, 672 (1993).

■ ¶ 7 Appellant was charged and convicted of summary Disorderly Conduct, 18 Pa.C.S. § 5503(a)(2), which provides:

(a) offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoy-

ance or alarm, or creating a risk thereof, he:

. . .

(2) makes unreasonable noise.

18 Pa.C.S. § 5503(a)(2). "The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace." *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999).

■ ¶ 8 "The *mens rea* requirement of Section 5503 demands proof that appellant by her actions intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm." *Commonwealth v. Gilbert,* 449 Pa.Super. 450, 674 A.2d 284 (1996). The specific intent requirement of this statute "may be met by a showing of a reckless disregard of the risk of public inconvenience," annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. *See Commonwealth v. Kidd,* 296 Pa.Super. 393, 442 A.2d 826 (1982).

■ ¶ 9 In disorderly cases based on one's making unreasonable noise, this Court has looked to language content *only* to infer whether the speaker *intended* to cause public annoyance, alarm, etc. Ultimately, however, what constitutes the *actus reus* of "unreasonable noise" under the disorderly conduct statute is determined solely by the *volume of the speech,* not by its content.

¶ 10 For example, in *Commonweatlh v. Gilbert,* 449 Pa.Super. 450, 674 A.2d 284, 286–287 (1996), this Court rejected the sufficiency of evidence as to both intent to cause public annoyance and noise level.

Interestingly, in the step one analysis of inferring culpable intent, the Court acknowledged a line of cases that have considered language content, i.e., whether the language was abusive or offensive, and whether it was coupled with aggressive actions in a turbulent environment. *Gilbert*, 674 A.2d at 286 (comparing *Commonwealth v. DeLuca*, 528 Pa. 290, 597 A.2d 1121 (1991)) (intent to cause public inconvenience found in defendant's loud, abusive, and obscene language directed at officer amid unruly crowd at stabbing scene, coupled with defendant's knocking away officer's hands). It found no intent in defendant Gilbert's public and vocal disagreement with a police officer who had ordered a neighbor's car to be towed. "Intent cannot be inferred from the officer's annoyance with appellant for disagreeing with him and for shouting his disagreement to his neighbor." *Gilbert*, 674 A.2d at 287. This finding, alone, reversed the conviction.

¶ 11 This Court nevertheless performed a step two analysis of determining whether Mr. Gilbert had actually been unreasonably noisy. Here, we stressed that content of Mr. Gilbert's language was irrelevant, stating that "the prohibition against unreasonable noise is directed at volume of speech not its content." *Gilbert*, 674 A.2d at 287 (quoting Model Penal Code and Commentaries § 250.2 commentary at 346 (Official Draft and Revised Comments 1980)).[1]

¶ 12 Under this test, we found no evidence that Mr. Gilbert was "especially loud." *Id.* "Pennsylvania law defines unreasonable noise as 'not fitting or proper in respect to the conventional standards of organized society or a legally constituted community.'" *Id.* (citations omitted). The Officer said that half the neighborhood came out to view the verbal "ruckus," but we specifically held that there was *"no evidence...that the level of noise was inconsistent with neighborhood tolerance or standards."* *Id.* (emphasis added).

¶ 13 Similarly, in an earlier case, *Commonwealth v. Gowan*, 399 Pa.Super. 477, 582 A.2d 879 (1990), this Court found that religious speakers in a park had been charged more for the content of their speech and for their appearance than for the actual noise they produced. Mere annoyance to the public on the basis of content, we held, is not enough to support an (a)(2) citation.

¶ 14 While *Gilbert* and *Gowan* are not factually identical to the present case because they did not involve personally insulting or offensive language directed at an ordinary citizen, their holdings that language content is relevant only to the step-one intent inquiry clearly apply. The second step of determining whether there was actually "unreasonable noise" may not be made by considering the content of language.

¶ 15 Accepting all findings of fact made by the trial court, and viewing such facts and inferences therefrom in a light most favorable to the Commonwealth as verdict winner, we nevertheless find insufficient evidence to establish that Appellant caused unreasonable noise as proscribed under the disorderly conduct statute. First, the undisputed fact that the Skowroneks were justifiably annoyed and irritated by Appellant's very loud and vile vocal outburst cannot, alone, create the inference that Appellant intended to cause or risk a pub-

---

1. Significantly, the Model Penal Code's Section 250.2, relied upon in *Gilbert*, requires eliminating language content from the "unreasonable noise" inquiry, and Pennsylvania's disorderly conduct statute § 5503(a)(2) adopted verbatim Model Penal Code 250.2. Moreover, rules of statutory construction would require both that "unreasonable noise" be construed according to its plain meaning and that penal statutes be strictly construed.

lic inconvenience under the law. Appellant stood 50 feet away from Mr. Skowronek when she yelled at him, her outburst contained no threats and actually expressed a desire to be left alone ("get that light off my house"), she immediately retreated back inside her home, and she summoned a peace officer to respond to what she believed—however unreasonably—was Mr. Skowronek's harassing conduct. This set of circumstances belies an intent to upset the public peace. *See and compare DeLuca, supra.*

¶ 16 Nor was the public peace jeopardized by the actual noise generated by Appellant. Appellant's single sentence outburst was brief, was only as loud as a person of her presumably ordinary physical abilities can shout, occurred in the evening prior to ordinary sleeping hours, and prompted neither civil unrest nor a single neighbor to seek police intervention. *See and compare Commonwealth v. Alpha Epsilon Pi,* 373 Pa.Super. 178, 540 A.2d 580 (1988) (sound system noise from a frat house party lasted hours, continued past 11:00 p.m., and could be heard in the residential neighborhood a block away); *Commonwealth v. Vesel,* 751 A.2d 676 (Pa.Super.2000) (ejected patron's loud banging on tavern door with fists and tire iron after 2:00 a.m. constituted disorderly conduct).[2] Though briefly irritating, Appellant's vocal noise did not upset the public peace as required under our jurisprudence. *See Hock, supra.*

¶ 17 Moreover, there was scant Commonwealth evidence to establish that the level of noise produced by Appellant was absolutely inconsistent with the residential neighborhood's tolerance levels or standards. No evidence was offered as to why the public peace in this particular neighborhood could not survive a passing, albeit very loud, vocal noise during evening hours. It is difficult to imagine, for example, that a parent's shouting from a front porch for her child to come in for the evening—a sound surely of similar decibel and duration—would jeopardize the public peace in this neighborhood.

¶ 18 Instead, what is apparent from the record is that the trial court made a finding of excessive noise based in part on the content of Appellant's speech. As can be seen from the 1925(a) opinion excerpt above, the trial court repeatedly reasons that the Skowroneks had the right not to be inconvenienced by a neighbor shouting profanities at them. By so intertwining the content of Appellant's speech with the volume of her speech in making its legal determination, the trial court compels us to find that it erroneously factored language content in the step two *"actus reus"* inquiry. That is to say, the court impermissibly found that Appellant was too loud in part because she was uttering profanities.

¶ 19 Again, the present charge came solely under Section (a)(2) "unreasonable noise." Section (a)(2) proscribes the act of making disorder-producing noise, as differentiated from Sections 5503(a)(1) and (3), which proscribe the act of speaking certain disorder-producing language. Here, there was no Section (a)(1) "fighting words"

**2.** In *Vesel,* evidence established that the defendant was kicked out of a bar just prior to its 2:00 a.m. closing. He immediately began pounding on the door with, *inter alia,* a tire iron in his effort to gain reentry, such that police were dispatched to the disturbance at 2:18 a.m. These facts indicate that the noise generated by the defendant lasted far longer than the noise presently at issue, and occurred during early morning hours. It should also be noted that *Vesel* affirmed judgment of sentence on a general disorderly conduct conviction, without reference to which particular subsection was charged. Indeed, the defendant's use of a tire iron to gain reentry into the bar would have constituted fighting or threatening behavior as proscribed by Section 5503(a)(1).

charge because there existed no evidence that retaliation was even contemplated, let alone attempted, against a 70 year old woman making comments from a distance and immediately retreating into her home afterwards. Even Mr. Skowronek testified that Appellant's rather rote, cliché string of generalized profanities was "kind of standard." Nor was this a Section (a)(3) "obscene language" case because Appellant did not offer her language in a sexual context appealing to one's prurient interests.

¶ 20 Under the facts before us, we therefore find Appellant's brief outdoor vocal outburst did not breach the public peace through unreasonable noise in violation of 18 Pa.C.S.A. § 5503(a)(2).

¶ 21 Judgment of sentence is vacated.