J-A15033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GERALD B. BLUNT | : | |
| | : | |
| Appellant | : | No. 3604 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 14, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-SA-0000494-2018

BEFORE:   BENDER, P.J.E., GANTMAN, P.J.E., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 06, 2019**

Appellant, Gerald Blunt, appeals from the judgment of sentence of a $25 fine, which was imposed following his conviction, after a bench trial on October 23, 2018, for disorderly conduct.[1]  After careful consideration, we affirm.

The facts and testimony underlying this appeal are as follows:

On March 22, 2018 at 4:45AM, Nurse Kelly [a registered staff nurse at Springfield Hospital] cared for [Appellant], a patient in the Hospital's Emergency Room.  [Appellant] arrived at the ER via ambulance for hypoglycemia.  Nurse Kelly testified that while at the ER, Nurse Kelly wrapped [Appellant] in blankets, comforted him and heated food for him.  Initially, [Appellant] was cooperative.  Once stable, the hospital discharged [Appellant].
Nurse Kelly testified that upon discharge after 4AM, she tried to help [Appellant] leave the hospital.  Nurse Kelly further testified that she attempted to contact [Appellant's] brother who, according to [Appellant], worked until 7AM, but the phone number was disconnected.  Nurse Kelly testified that upon discharge, [Appellant] became paranoid and uncooperative.

---

[1] 18 Pa. C.S. § 5503(a)(1-3).

\* Retired Senior Judge assigned to the Superior Court.

According to [Appellant's] medical records, [Appellant] stated that he would not leave. [Appellant] refused to sign his discharge papers. As a result of the behavior, Nurse Kelly told [Appellant] that he could go out in the waiting room where he could wait for his ride, provided him with blankets, and gave him two chairs. Nurse Kelly testified that [Appellant] began screaming at the top of his lungs and banged on the doors in the waiting room. Nurse Kelly further testified that [Appellant's] behavior made her feel unsafe causing her to call for security.

Tamika Wells, a Crozer Keystone Security Guard, testified that while working at the Springfield Hospital on March 22, 2018, she received a call at 5AM to come to the Emergency Room. As she was coming towards the ER's Nursing Station, Ms. Wells heard someone screaming at the top of his/her lungs for help and banging on the side door. When Ms. Wells opened the waiting room door, [she] saw [Appellant], and asked him what is wrong. [Appellant] responded that "they have me locked up in this f--king building" Ms. Wells told [Appellant] that the doors were not locked and asked him to calm down, to leave the hallway and to return to the waiting room.

- - -

Ms. Wells testified that [Appellant], then, calmed down a little, but started to become agitated again. Ms. Wells further testified that [Appellant] asked her to call the police because he wanted them to take him home. Ms. Wells told [Appellant] that the police would not do so, but [Appellant] insisted that they would. Ms. Wells testified that [Appellant], then, sprung up from his chair, jumped up in her face, and screamed at her about calling the police. Ms. Wells further testified that she asked him to step back and sit in the chair. Then, Ms. Wells called the police.

Ms. Wells testified that while waiting for the police's arrival, [Appellant] walked back and forth in the waiting room, threw his blankets and discharge papers, and was being loud. Ms. Wells further testified that she spoke with Springfield Township Officer Daniel Boyd regarding the situation. Ms. Wells testified that Officer Boyd spoke to [Appellant], who was seated at this time, and that [Appellant] screamed at the police officers.

Trial Court Opinion at 2-5 (citations omitted). Springfield Township Officer

Boyd attempted to diffuse the situation by informing Appellant, whom he

determined to be lucid in the course of his questioning, that he did not want to arrest him, but that he could not remain inside the hospital if he could not act appropriately. *Id*. at 5 (citations omitted). Officer Boyd testified that when he informed Appellant that the police would not give him a ride home, but would make contact with someone who could pick him up, Appellant "threw a tantrum," flailing around the waiting room in a bizarre and erratic fashion, and was then directed to leave the waiting room. *Id*. at 6 (citations omitted).

> Officer Boyd testified that [Appellant] exited the Emergency Room and walked to Sproul Road. However, [Appellant] turned around once he reached Sproul Road, walked back to the Hospital, and attempted to re-enter the Emergency Room's waiting room. Officer Boyd testified that Sergeant McKinney approached [Appellant] informing him that he could not re-enter the hospital and that [Appellant] flailed his arm out in resistance. Officer Boyd further testified that several officers, then, advanced upon [Appellant] who attempted to push his way through them causing him to fall to the ground. Officer Boyd testified that after [Appellant] got up and made a second attempt to enter the hospital, the officers had no choice but to arrest him. Officer Boyd further testified that [Appellant] resisted being placed in custody.

*Id*. at 6 (citations omitted).

Appellant timely filed this direct appeal,[2] and presents the following issue for our review:

> Was the evidence insufficient beyond a reasonable doubt to establish the crime of disorderly conduct where the Commonwealth failed to prove the *mens rea* and video surveillance footage refutes the Commonwealth evidence that established the elements of the crime?

---

[2] Appellant filed his statement of errors complained of on appeal on January 18, 2019.

Appellant's Brief at 2 (capitalization and suggested answer omitted).

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa.Super. 2017) (quoting

***Commonwealth v. Rodriguez***, 141 A.3d 523 (Pa. Super. 216) (internal

brackets omitted).

The Pennsylvania Crimes Code defines disorderly conduct as follows:

> § 5503. Disorderly conduct
>
> (a)    Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2)  makes unreasonable noise:

(3)  uses obscene language, or makes an obscene gesture;

   …

(b) Grading. –An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist.  Otherwise disorderly conduct is a summary offense.

(c) Definition.-As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa. C.S. § 5503(a)(1-3)-(c).

The *mens rea* requirement of Section 5503 demands proof that appellant by [his] actions intentionally or recklessly created a risk of causing or caused a public inconvenience, annoyance or alarm. The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm.

*Commonwealth v. Maerz,* 879 A.2d 1267, 1269 (Pa. Super. 2005) (citations omitted).

Appellant contends, first, that his arrest for disorderly conduct was not based upon his conduct inside the hospital.  We disagree.  Officer Boyd testified that the police responded to "a report of a disorderly subject in the Emergency Room."  N.T. at 45.  Both Nurse Kelly and Ms. Wells, the security guard, provided lengthy testimony regarding Appellant's conduct inside the hospital prior to the arrival of the police officers.  *Id*. at 4-28, 29-42.  Upon arrival, and after speaking with the Ms. Wells, Officer Boyd asked Appellant

how he was and what was going on, and Appellant replied, "you're going to lock me the f—k up or you're going to take me home." *Id*. at 46. Officer Boyd told Appellant that he did not want to arrest him, and cautioned that if he did not conduct himself appropriately, he would not be permitted to remain inside the hospital. *Id*. at 47. Officer Boyd testified that after he told Appellant he was not going to be provided with a ride home by the police, he began "flailing around" and walking around in a bizarre erratic fashion." *Id*. at 48. Appellant walked out of the hospital at that time, but shortly thereafter returned, and tried to gain entry. *Id*. at 49-50.

The trial court found the testimony of all of the Commonwealth's witnesses to be credible. Trial Court Opinion at 12. It found that Appellant had failed to provide any credible testimony about the events that occurred on the day in question, or to provide a relevant defense for his behavior. *Id*.

The trial court as fact-finder is free to believe all, part, or none of the evidence presented, and we will not reweigh the evidence and substitute our judgment for that of the trial court. *Rodriguez*, 141 A.3d at 525. Appellant argues that the videotape evidence refutes the version of events related by the witnesses, both inside and outside the hospital, and asserts that Appellant's physical encounter with the police was completely initiated by the police, as Appellant tried to leave the area. After a thorough review of the videotape evidence, which has no sound and cannot therefore reveal the

verbal interactions between the parties, we find no inconsistency between what was depicted in the videotape and the testimony of the witnesses.

The trial court properly concluded that the fact that Appellant felt ill and did not want to be discharged from the hospital did not justify his unreasonable behavior, which "inconvenienced, annoyed and alarmed all of those he came in contact with at the hospital." *Id*. *See Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 2008) ("The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.").

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/6/19