J-S34038-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAHLIL HAMMOND | : | |
| | : | |
| Appellant | : | No. 88 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 9, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0002012-2018

BEFORE: DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.: FILED AUGUST 16, 2019

Appellant, Kahlil Hammond, appeals from the judgment of sentence of
two to four years of confinement, which was imposed following his conviction
for aggravated harassment by prisoner and disorderly conduct.[1] After careful
consideration, we affirm.

The facts underlying this appeal are as follows:

The Appellate is an inmate resident of the State Correctional
Institution Fayette, hereinafter "SCI Fayette." On the evening of
May 16, 2018, Officer Justin Borquin and his fellow corrections
officers were in the process of moving Appellant's cell. During the
initial cell move, Sergeant Tanner, Officer Miller, and Officer Luko
were also present with Officer Borquin. Officer Borquin testified
that while he was placing property into the cell, he became aware
that Appellant was becoming noncompliant and was getting
louder. Sergeant Tanner then directed Officer Borquin to move
the property out of the cell and call for additional staff. Appellant

_____

[1] 18 Pa.C.S. §§ 2703.1 and 5503(a)(4), respectively.

* Retired Senior Judge assigned to the Superior Court.

began to move onto the ground. At this time, Lieutenant Poska and Officer Harbaugh arrived at the scene with a camera.

Next, the officers assisted Appellant to his feet. Because Appellant was still noncompliant, Lieutenant Poska ordered him to be put against the wall and for a restraint chair to be brought out for transport purposes only. As the officers began to place Appellant into the restraint chair, Appellant spit on Officer Luko. After Appellant chewed through several spit guards, he continued yelling obscenities and degrading comments towards the officers.

Trial Court opinion, filed February 7, 2019, at 2-3 (citations omitted).

Appellant was convicted by a jury, and on January 15, 2019, he filed this timely direct appeal.[2]

Appellant presents the following issues for our review:

    I.     Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of aggravated harassment by prisoner?

    II.    Whether the evidence was legally and factually sufficient to prove that [Appellant] had the requisite intent to commit the crime of disorderly conduct.

Appellant's Brief at 4 (unnecessary capitalization and answers omitted). This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of evidence claim must fail.

_____

[2] Appellant was directed to file a concise statement of errors complained of on appeal on January 15, 2019, and did so on January 28, 2019.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Izurieta, 171 A.3d 803, 806 (Pa.Super. 2017) (quoting Commonwealth v. Rodriquez, 141 A.3d 523 (Pa. Super. 2016) (internal brackets omitted).

A person is guilty of aggravated harassment by prisoner if he:

is confined in or committed to a local or county detention facility, jail, or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth...

[and]

while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S. § 2703.1.

Appellant first contends that the Commonwealth failed to establish that he intentionally caused saliva to come into contact with Officer Luko, and that by his testimony at trial, Appellant established that he chewed through pieces of the spit mask in order to be able to breathe, and only expelled them so as not to choke on them.

- 3 -

Appellant further contends that the Commonwealth similarly failed to demonstrate his intent to commit the offense of disorderly conduct. A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S. § 5503(a)(4). "Public" is further defined as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons...or any premises which are open to the public." 18 Pa.C.S. § 5503(a)(4)(c) (emphasis supplied).

In its opinion, the trial court noted that Appellant had waived his right to challenge the sufficiency of the evidence based on his 1925(b) statement;[3] the trial court nevertheless addressed the merits of his challenge and found that the record fully supported the jury's verdict. Trial Court Opinion at 4. Initially, we disagree that Appellant failed to specify the unestablished element or elements of the offenses of which he was convicted; however briefly stated, Appellant did in fact allege in his "Concise Statement" that the Commonwealth

_____

[3] This Court has consistently held that to preserve a claim that the evidence was insufficient, the 1925(b) statement of errors complained of on appeal must specify the element or elements upon which the evidence was insufficient, and the Court may then analyze them; where a 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. Commonwealth v. Tyack, 128 A.3d 254, 260 (Pa. Super. 2015).

failed to prove he possessed the requisite intent to commit the crimes of which he was convicted. We therefore review his claims.

After careful review, we find that the Commonwealth proved the elements of both aggravated harassment by prisoner and disorderly conduct beyond a reasonable doubt. Corrections Officer Borquin testified that in the course of returning boxes of property that had been removed from Appellant's cell when he moved from one cell to another, he heard commotion from the hallway where Appellant was being held temporarily, pursuant to protocol, pending the transfer of property. N.T. at 25-26. Officer Borquin observed Sergeant Tanner, who was with Appellant, call for additional help and further observed Sergeant Tanner and Officer Miller, who were moving side to side with Appellant, begin to place him on the ground. Id. at 25. Lieutenant Poska was called to the scene, and he instructed another officer to bring the hand-held camera, in accordance with protocol when any type of use of force occurs on the unit. Id. at 39. Lieutenant Poska testified that Appellant continued to physically resist the officers and attempted to bite staff; he therefore called for leg restraints and a spit mask to be put on Appellant. Id. at 37. The officers assisted Appellant to his feet, where he continued to be noncompliant and combative, and Lieutenant Poska ordered Appellant to be put against the wall and for a restraint chair be brought out to transport Appellant to his cell. Id. at 25, 37. Appellant had bitten a hole through the spit mask, and Poska called for another spit mask to be applied. Id. at 37.

Officer Borquin testified that he, Lieutenant Poska, Officer Luko and one other officer worked to place Appellant in the restraint chair and that he observed Appellant spit on Officer Luko. Id. at 25-26. Once secured in the chair, Appellant was moved to the "L Unit intake hallway," where he continued to be noncompliant, verbally abusive and "bucking around up and down like pulling his arms and twisting, shaking" and "yelling a bunch of degrading comments at the officers". Id. at 26-27. At trial, Lieutenant Poska testified while the video taken with the hand-held camera was played, providing context:

> At this point, they're placing [Appellant] into the portable restraint chair for transport to the intake area. Right now, he's resisting…Officer Luko is directly in front of [Appellant]…[identifying the moment at which [Appellant] spit] that was whenever [Appellant] spit directly into the face of Officer Luko…[Luko] was attempting to connect the lap belt for transport in the portable restraint chair…as soon as he was spit on he moved over to the side…and you see the rest of staff react at that point in time.

Id. at 42-43. Lieutenant Poska further testified that "you can hear in the background other inmates yelling and everything, that's the commotion of the incident. We remove him from that environment and take him out to the front where the intake area is." Id. at 47.

Officer Luko, who was returning the property to Appellant's cell, testified that he could hear that a scuffle had ensued outside Appellant's cell, and he left the cell and went out into the hall to assist the other officers; he stated that Appellant continued to struggle, "thrashing around," and the officers had

to take him to the ground. Id. at 61. Officer Luko testified that while the officers were attempting to place Appellant in the restraint chair, he was charged with helping to keep control of Appellant's legs, and that he witnessed Appellant chewing a hole through the spit mask, wetting it with his saliva. Id. at 62-63. Officer Luko stated that Appellant was trying to bite at the elbow of Officer Miller, who was standing to Appellant's right, so he warned Miller and Miller moved out of the way; Officer Luko heard Appellant spit and felt the spit hit him at his temple, up the side of his head. Id. at 64.

Appellant testified, asserting that the corrections officers were attempting to antagonize him from the time he was brought out of his cell, and that he was slammed to the ground and punched in the face and in the back of his head. Id. at 72. He contends that once pinned to the ground, he was told to stop resisting, but could not have resisted because he was by that time cuffed behind his back. Id. Appellant's testimony regarding the period of time when the corrections officers were placing him in the portable restraint chair up until the moment he is seen spitting on Officer Luko is inconsistent with the officers described on the video. Although he did not attempt to pinpoint a portion of the video to support his version of events, he testified that a corrections officer was putting his hand in his mouth, thus preventing him from breathing through the spit mask, and that officers were putting their fingers in his eyes to inflict pain on him; he denied that he spit, asserting that he was "basically trying to get [the corrections officer's] hand out of [his]

mouth." Id. at 74. Appellant testified that nothing landed on Officer Luko, and that he did not "actually think anything had come out his mouth." Id. at 75.

In concluding that the evidence supported the jury's findings, the trial court opined that the testimony of the corrections officers present at the scene was confirmed by the video evidence proffered during the testimony. Trial Court Opinion at 6. Indeed, though the video consisted of approximately thirty-five minutes of footage of the incident, at trial Appellant's counsel only agreed to the playing of approximately twelve minutes of the video, including footage at minute three wherein Appellant is observed spitting at Officer Luko. During deliberations, the jury requested and was re-shown, twice, the portion of the video immediately before and after the spitting allegedly occurred, and also requested and were re-shown the video at minute twelve, forty-five seconds, where the third spit guard that had been applied came down from Appellant's face. N.T. at 96. Moreover, the officers' testimony alone was sufficient to support the finding that Appellant spit on Officer Luko.

Before this Court Appellant also/alternatively asserts that he had to get the pieces of the spit mask out of his mouth, and expelled them so that he would not choke on them. Id. at 75; Appellant's Brief at 8. Lieutenant Poska, however, testified that the spit mask does not obstruct breathing, describing it as "almost like a real thin cotton...the top of it [is] a mesh material to allow breathability and the bottom of it is still relatively soft, it just prevents spit

from coming through it, unless if there is a hole in it like there was in this case." N.T. at 44. We find that this testimony and the other evidence offered by the Commonwealth witnesses that Appellant was chewing through the spit mask, and that he spit toward Officer Luko's face, as confirmed by the video taken during the incident, is more than sufficient to establish that Appellant intentionally caused Officer Luko to come into contact with his saliva, thus satisfying the requisite element of intent.

Likewise, with regard to Appellant's conviction for disorderly conduct, we find that his argument that he was incapable of creating a hazardous or physically offensive condition because he "was in a restraint chair, handcuffed, [wearing] a spit mask," and "was ultimately restrained by six officers," to be completely without merit. Appellant's Brief at 9. In an incident that continued for approximately thirty-five minutes, six officers were required to bring Appellant under control, and out of the hearing distance of the other prisoners. Appellant attempted to bite one officer and did in fact spit at another. The intent element of disorderly conduct "may be met by showing a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than cause public inconvenience, annoyance, or alarm." Commonwealth v. Maerz, 879 A.2d 1267, 1269 (Pa. Super. 2005). After review of the facts established at trial by the testimony of the corrections officers and the relevant statutes, it is clear that the elements of aggravated harassment by prisoner

and disorderly conduct were established beyond a reasonable doubt. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins in the Memorandum

Judge Dubow Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2019