J-A05035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JONATHAN E. THOMA | : | |
| | : | |
| Appellant | : | No. 1005 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 21, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000993-2018

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 23, 2020**

Jonathan E. Thoma (Thoma) appeals from the judgment of sentence imposed by the Court of Common Pleas of Indiana County (trial court) after a jury convicted him of disorderly conduct graded as a third-degree misdemeanor.[1]  On appeal, he raises a sufficiency challenge to his conviction. After review, we find there was sufficient evidence to convict for disorderly conduct but not as a third-degree misdemeanor.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Thoma mistakenly indicates that he is appealing the denial of his post-sentence motion.  When timely post-sentence motions are filed, an appeal properly lies from the judgment of sentence made final by the denial of those post-sentence motions. ***See Commonwealth v. Kuykendall***, 2 A.3d 559, 560 (Pa. Super. 2010).

On August 13, 2018, around 9:25 p.m., Pennsylvania State Police Troopers Roland and Onder were on patrol when they received a report of an intoxicated driver in a Jeep Cherokee at a nearby Sheetz. Upon arriving there, Trooper Roland spotted Thoma pumping gas into a Jeep Cherokee. Trooper Roland then pulled his cruiser in front of the Jeep and stared at Thoma. Startled by the trooper's sudden appearance, Thoma turned away and walked toward Sheetz, leaving the gas nozzle in the Jeep. As Thoma walked to the store, Trooper Roland got out of his cruiser and yelled for him to stop. Thoma complied and walked back to Trooper Roland.

Trooper Roland told Thoma he was there for a reported intoxicated driver and asked him if he had identification. Because he had a bench warrant for his arrest, Thoma gave Trooper Roland the name of his brother, Jason Thoma. But when a search revealed that his brother lived in Florida, Trooper Roland told Thoma that he would need to be fingerprinted in order to confirm his identity. Upon hearing this, Thoma became upset and argued with the troopers but Trooper Roland replied there was no other way to confirm his identity.

Realizing that the troopers would find out about his bench warrant, Thoma turned from Trooper Roland and began running away through the parking lot. The troopers immediately gave chase and warned Thoma that they would deploy their tasers if he did not stop. When he would not stop, Trooper Roland deployed his taser but missed. Trooper Onder then fired his

and hit Thoma in the back. Thoma fell and hit his head on the ground, knocking him out momentarily. When he came to, he pulled his arms and kicked out his legs in an effort to push himself up off the ground. Trooper Roland told him to calm down but Thoma continued to struggle for several minutes, requiring the troopers to hold him down so he could not get up. He eventually stopped and was taken for medical treatment for his head.

Thoma was charged by criminal information with false identification, 18 Pa.C.S. § 4914(A), and disorderly conduct under 18 Pa.C.S. § 5503(a)(1), charged as a third-degree misdemeanor pursuant to § 5503(b). For disorderly conduct, the Commonwealth alleged that Thoma "was physically combative with Pennsylvania State Troopers as they were attempting to take him into custody." Thoma eventually proceeded to a jury trial where he was acquitted of false identification but convicted of disorderly conduct graded as a third-degree misdemeanor. Waiving his right to a pre-sentence investigation, Thoma was sentenced to 12 months' probation that same day. He then filed a post-sentence motion alleging there was insufficient evidence to convict him of either disorderly conduct or the enhanced grading. After that motion was denied, Thoma filed this appeal to challenge the sufficiency of the evidence for disorderly conduct.[2]

---

[2] We apply the following standard of review for a sufficiency challenge:

Thoma was convicted under Subsection 5503(a)(1) of the disorderly conduct statute, which reads in pertinent part as follows:

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**(b) Grading**.--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

---

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Teems*, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation omitted).

**(c) Definition.**--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503.[3]

In its Pa.R.A.P. 1925 opinion, the trial court found that there was sufficient evidence to convict Thoma of disorderly conduct:

[T]he entire incident took place in the parking lot of an operating Sheetz store; this obviously constitutes a public place within the meaning of the Disorderly Conduct statute. Next, it is clear that [Thoma] engaged "in fighting or threatening, or in violent or tumultuous behavior." [Thoma's] intentional, culpable conduct consisted of running from uniformed police officers, ignoring commands to stop given by the police officers, running through the first taser hit (thereby requiring the firing of a second taser), and pulling his arms away and kicking his legs in an attempt to push up despite the physical efforts and verbal commands of the police officers. Given the nature and extent of [Thoma's] actions, [Thoma], at the very least, recklessly created a risk of causing public inconvenience, annoyance, or alarm.

Trial Court Opinion, 5/30/19, at 6.

Thoma concedes that he was combative with the troopers but disputes that the Commonwealth presented sufficient evidence to establish that he

_____

[3] The offense of disorderly conduct is intended to protect the public. ***Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008) ("Certainly, Section 5503 is aimed at protecting the public from certain enumerated acts."). "The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace." ***Commonwealth v. Hock***, 728 A.2d 943, 947 (1999) (quotation omitted).

intended to or recklessly created the risk of a "public inconvenience, annoyance or alarm." "The *mens rea* requirement of Section 5503 demands proof that appellant by [his] actions intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm." **Commonwealth v. Maerz**, 879 A.2d 1267, 1269 (Pa. Super. 2005) (quotation omitted). The specific intent requirement "may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." **Id**. (citation omitted).

There was sufficient evidence that Thoma committed the *actus reus* of the offense by engaging in "fighting or threatening, or in violent or tumultuous behavior." Moreover, because it took place in the Sheetz parking lot, Thoma's conduct related to the public because it was "affecting or likely to affect persons in a place to which the public or a substantial group has access." 18 Pa.C.S. § 5503(c). As to whether he had the intent to cause a public inconvenience, Thoma speculates that he could not have formed an intent when he was combative with police officers because he had just regained conscious from being tasered and was confused. However, this argument ignores the events leading up his takedown. When asked for his identity, Thoma gave the troopers his brother's name, presumably in the hopes that he would not be taken into custody on a bench warrant; but when he was told

that he would be taken to be fingerprinted, Thoma became upset and eventually ran away from the troopers so that he would not be taken into custody. Even after he was subdued and handcuffed, Thoma struggled with the troopers for several minutes until he complied and stopped trying to get up. *See* N.T., 2/19/19, at 26. Additionally, all of this occurred in a public place—a Sheetz parking lot—at a time when, according to Trooper Roland, there were vehicles parked and people at the store.

Overall, viewing this evidence in a light most favorable to the Commonwealth, Thoma's conduct is sufficient to make out summary disorderly conduct because he engaged in defined conduct "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Members of the public that viewed this conduct were reasonably inferred to have been annoyed or alarmed by this conduct to make out summary disorderly conduct.

While the evidence is sufficient to establish summary disorderly conduct, the issue then is whether the conduct was sufficient to make misdemeanor disorderly conduct. As charged in the criminal information, the Commonwealth was required to show that Thoma persisted in his disorderly conduct "after reasonable warning or request to desist." 18 Pa.C.S. § 5503(b). To establish the enhanced grading, the Commonwealth asked Trooper Roland if he said anything to Thoma once he regained consciousness. Trooper Roland replied as follows:

> I gave him commands to sit still. At that point he was pulling his arms away and kicking his legs and trying to push up. I told him that he was under arrest and to calm down.

N.T., 2/19/19, at 25.

This answer, which constitutes the sum of evidence the Commonwealth presented to establish the enhanced grading, is not enough to raise disorderly conduct from a summary to a misdemeanor. Trooper Roland testified that Thoma was already under arrest and placed in handcuffs when he regained consciousness. Once Thoma began to try and push himself up, Trooper Roland simply told him to "sit still" and "calm down." This is not enough. These comments were standard commands made any time someone is arrested and exhibits resistance. They were not, as we read Section 5503(b) to contemplate, warnings to Thoma that he would suffer additional consequences or criminal liability if he did not desist in his behavior. Accordingly, we reverse Thoma's conviction on misdemeanor disorderly conduct and remand for sentencing on summary disorderly conduct.

Jurisdiction relinquished.

President Judge Emeritus Bender joins the memorandum.

Judge Bowes files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/23/2020</u>