J-S08024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TERRY L. FAUST, JR. | : | No. 1138 MDA 2020 |

Appeal from the Order Entered August 18, 2020,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0000585-2020.

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED JUNE 15, 2021**

This is an interlocutory appeal[1] by the Commonwealth from an order suppressing the evidence against the Defendant, Terry L. Faust, Jr., in a driving-under-the-influence case.[2]  An officer conducted a traffic stop of Mr. Faust for alleged disorderly conduct,[3] after Mr. Faust's tires squealed during the evening hours.  The trial court found, as a fact, that the squealing tires did not disturb the peace of the neighborhood where this incident occurred. Therefore, the officer lacked reasonable suspicion to investigate Mr. Faust's conduct, and we affirm the order of suppression.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The interlocutory appeal is properly before us.  *See* Pa.R.A.P. 311(d).

[2] *See* 75 Pa.C.S.A. § 3802(a)(1), (c).

[3] *See* 18 Pa.C.S.A. § 5503.

The suppression court made the following factual findings in this case as follows. On the night of August 19, 2019, Mr. Faust drove home from the Sons of Italy, on Frichey Street, in Lower Paxton Township. While departing the Sons of Italy, Mr. Faust's tries made a squealing noise. This sound attracted the attention of a nearby police officer, who had her back to Mr. Faust's truck. Hence, she did not know whether he was leaving the bar. The officer got in her marked-patrol car and began following Mr. Faust.

He drove westbound on Frichey Street, turned north on Holbrook, and then went eastbound on Jonestown Road. Mr. Faust obeyed all traffic laws and, in the officer's opinion, "drove slowly, cautiously probably, and . . . turned left onto North Houcks Road. He then made a left onto Care Street." N.T., 7/22/20, at 6. The officer continued straight and made the next left, onto Devonshire Road, which allowed her to parallel and to observe Mr. Faust's westbound progress on Care Street.

The tires of Mr. Faust's truck squealed again, and his rear end fishtailed slightly. Then the truck pulled into and parked at 9 Care Street, Mr. Faust's home. The officer pulled behind Mr. Faust and activated her overhead lights, because she believed that "the fishtailing, the squealing of the tires [was] disorderly conduct." N.T., 7/22/20, at 7. She also testified that stopping vehicles for tire squealing and fishtailing based on disorderly conduct is "a regular occurrence" within her police department. *Id.*

After interacting with Mr. Faust, the officer arrested him for DUI. Mr. Faust moved to suppress the evidence of his intoxication. He argued that the

officer lacked a constitutional basis for initiating the traffic stop. The trial court agreed and granted his motion. The Commonwealth filed this timely appeal.

In its Statement of Issues Involved, the Commonwealth asks only:

> Whether the [suppression] court erred in granting [Mr. Faust's] pretrial suppression motion where law enforcement officers possessed reasonable suspicion to conduct a traffic stop of [Mr. Faust's] vehicle?

Commonwealth's Brief at 4. The Commonwealth then raises another issue in its argument – *i.e.*, whether this Court may alternatively sanction the traffic stop under the community-caretaker doctrine. ***See id.*** at 15-16. We address each issue in turn.

*A.    Lack of Reasonable Suspicion to Support the Traffic Stop*

Under the Fourth Amendment,[4] when reviewing a suppression order, our standard of review varies depending upon whether police obtained a warrant. ***Compare Illinois v. Gates***, 462 U.S. 213 (1983), ***and Ornelas v. United States***, 517 U.S. 690 (1996). Where, as here, police have failed to

---

[4] The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

obtain a warrant, our standard of review for whether reasonable suspicion or probable case existed is *de novo*. **See Ornelas**, 517 U.S. at 691.

However, we review a suppression court's findings of fact deferentially. As Chief Justice Rehnquist said, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." **Id.** at 699. "A trial judge views the facts of a particular case in light of the distinctive features and events of the community . . . [these] background facts, though rarely the subject of explicit findings, inform the [trial] judge's assessment of the historical facts." **Id.** at 699–700.

In the instant matter, the trial judge found, based on historical facts of the locality, that two tire squeals did not disrupt the peace of the neighborhood in question. The suppression court opined as follows:

> Disorderly conduct . . . is defined as "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, a defendant makes unreasonable noise." 18 Pa.C.S.A. § 5503(a)(2). Unreasonable noise is defined as "not fitting or proper in respect to the conventional standards of organized society or at a legally constituted community." **Commonwealth v. Maerz**, 879 A.2d 1267, 1270 (Pa. Super. 2005) (internal citations omitted). The determination of what constitutes "unreasonable noise" is fact specific*. **See Commonwealth v. Forrey**, 108 A.3d 895 (Pa. Super. 2015) (defendant could not have created unreasonable noise because no member of the public was present to hear); **Maerz**, 879 A.2d 1267 (defendant's single outburst did not jeopardize the public peace) . . .
>
> Additionally:

> The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective; it is intended to preserve the public peace.

*Id.* at 1269 (citing ***Commonwealth v. Hock***, 725 A.2d 943, 947 (Pa. 1999). "Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa. Super. 2017) (internal citations omitted).

>                  *    *    *    *    *

> this Court finds that [the officer] lacked probable cause to conduct a traffic stop of [Mr. Faust's] vehicle for disorderly conduct. There was no evidence adduced at the suppression hearing that [Mr. Faust] created a level of noise inconsistent with neighborhood standards. [The officer] testified that on both occasions, [Mr. Faust's] tires squealed for a couple of seconds. She did not testify that [Mr. Faust] revved his engine, that the squealing tires occurred in rapid succession, or that it was a prolonged noise. There was also no evidence elicited as to the volume of the squealing tires. Additionally, the area in which this occurred is parallel to a busy two-lane divided highway (Jonestown Road) with a mix of residential and commercial properties. Presumably, residents in the neighborhood are used to hearing traffic-like noise from Jonestown Road. We do not find the brief squealing of tires, two separate times, is the type of conduct contemplated within the purview of the disorderly conduct statute.

Trial Court Opinion, 8/17/20, at 3-4, 7 (some punctuation omitted). Thus, the suppression court found that the tire squeals were an insufficient basis for probable cause in that area of Dauphin County, because they could not

factually amount to the *actus reus* of the crime for which the officer stopped Mr. Faust. The court therefore granted the motion to suppress.

The Commonwealth disagrees with that decision. It believes the officer "had reasonable suspicion to investigate whether [Mr. Faust's] disorderly conduct or possible drunk driving was the result of willful and deliberate misfeasance, a vehicle defect, or some combination of the two." ***Id.*** at 7. The Commonwealth argues that the police needed only reasonable suspicion to effectuate this traffic stop, rather than probable cause, because the officer could reasonably seek to investigate Mr. Faust's *mens rea* regarding why his tires squealed. ***See id.*** at 12-13.

The officer supposedly "had reasonable suspicion to stop [Mr. Faust's] vehicle to determine whether it was defective, *i.e.*, if the tires were bald or there was some other mechanical problem which was causing the machine to operate in an unsafe manner." ***Id.*** at 14. Thus, the Commonwealth claims the officer could momentarily detain Mr. Faust to see if he negligently or intentionally squealed his tires, because, in the Commonwealth's view, an intentional squealing of tires would constitute disorderly conduct.

The Commonwealth's argument misses the mark. The suppression court based its order of suppression not upon the *mens rea* portion of the crime. Instead, the suppression court's factual findings concerning the area near Jonestown Road negated the *actus reus* of disorderly conduct and made further investigation into Mr. Faust's *mens rea* unnecessary.

"Pennsylvania courts recognize that under limited circumstances police are justified in investigating a situation, so long as the police officers reasonably believe that criminal activity is afoot." ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999). Here, because there was no *actus reus*, no reasonable persons in the officer's position could possibly conclude that the crime of disorderly conduct was afoot. The *actus reus* of the crime had not manifested itself by the time of the traffic stop, and it could not appear once the vehicle had stopped. Hence, the officer lacked reasonable suspicion to detain and to investigate Mr. Faust's *mens rea* for a crime that, factually speaking, had not and could not occur.

The Commonwealth's first appellate issue affords it no relief.

B.      *Wavier of the Community-Caretaker Theory*

Next, the Commonwealth raises an alternative theory in its brief. It asserts that, even if the officer lacked reasonable suspicion for a traffic stop, she "was permitted to stop [Mr. Faust's] vehicle pursuant to the community-caretaking-and-public-safety doctrine where the suspected, defective vehicle posed not only a risk to [Mr. Faust] but to the public at large." Commonwealth's Brief at 15.

The Commonwealth did not raise this alternative basis for upholding the officer's actions before the suppression court. Generally, this failure to preserve a theory for our appellate review constitutes waiver of the theory or issue. ***See*** Pa.R.A.P. 302(a); ***Commonwealth v. McKahan***, 10 WDA 2019, 2021 WL 100574 (Pa. Super. 2021) (*en banc*) (unpublished) (holding that the

Commonwealth's failure to raise the good-faith exception in the suppression court constitutes waiver of that theory on appeal).

Ignoring this waiver problem, the Commonwealth instead invites us to revive the long-dead appellate doctrine of basic and fundamental error. The Commonwealth contends that, "If an appellate court may affirm a valid verdict based on any reason appearing in the record, regardless of whether the rationale was raised by the appellee, so too should an appellate court reverse the granting of suppression where there was no impropriety in law enforcement's conduct and the individual's rights are not impugned in any way, as is the case here." Commonwealth's Brief at 15. Thus, the Commonwealth would have us reverse based on issues it neither raised nor argued in the lower court. This is known as the basic-and-fundamental-error doctrine, which the Supreme Court of Pennsylvania excised from Pennsylvania appellate practice decades ago in *Commonwealth v. Clair*, 326 A.2d 272 (Pa. 1974).

According to the *Clair* Court, the doctrine of basic and fundamental error "is merely a vehicle whereby the [appellate] court can arbitrarily reverse on an otherwise unpreserved issue." *Id.* at 273. Moreover, "the doctrine (1) removes the professional necessity for diligent preparation, (2) penalizes the opposing party, (3) denies the trial court an opportunity to correct the error, (4) erodes the finality of trial court holdings, (5) encourages unnecessary appeals, and (6) needlessly discourages alert professional representation." *Id.* (some punctuation omitted). Thus, the doctrine is dead in Pennsylvania's

appellate courts and, as an intermediate appellate court, we must reject the Commonwealth's request to resurrect it.

In short, because the Commonwealth failed to raise and argue that the officer could approach Mr. Faust under the community-caretaking exception to the warrant requirement, it waived this alternative claim. We may not address the merits of a theory the Commonwealth failed to preserve. *See Clair*, *supra*.

Order affirmed. Case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021