J-S54027-17

2017 PA Super 335

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| N.M.C. | : | |
| | : | |
| Appellant | : | No. 225 WDA 2017 |

Appeal from the Judgment of Sentence January 6, 2017
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-SA-0000035-2016

BEFORE:   OTT, J., MOULTON, J., and FITZGERALD, J.[*]

OPINION BY MOULTON, J.:                              FILED OCTOBER 23, 2017

N.M.C. appeals from the January 6, 2017 judgment of sentence entered in the Clearfield County Court of Common Pleas following his bench trial conviction for disorderly conduct – creates a hazardous or physically offensive condition.[1]  Because we conclude that the evidence is insufficient to sustain the conviction, we vacate N.M.C.'s judgment of sentence.

On May 10, 2016, at approximately 1:15 p.m., then-14-year-old N.M.C. used his cell phone to video-record a fight between two other male students that occurred in the boys' bathroom at Dubois Area Middle School.  The 45-second video shows two male students talking, squaring off, shoving each

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(4).

other, and throwing several punches. In the background of the video, a male student exposes his buttocks to the camera and another is standing at a urinal behind a divider. That evening after school, N.M.C. sent the video via text message to his girlfriend and one other student. On May 11, 2016, a third student asked N.M.C. if he could see the video, but N.M.C. refused to show it to him.

On May 11, 2016, the assistant principal, Michael Maholtz, learned of the fight. Maholtz confronted the combatants and eyewitnesses to the fight, who did not tell Maholtz the truth about the altercation. After these interviews, Maholtz received a copy of the video from N.M.C.'s girlfriend. The video helped Maholtz identify the participants as well as other students present for the fight,[2] and Maholtz subsequently conducted additional interviews. When first interviewed, N.M.C. admitted that he witnessed the fight but did not reveal that he had taken a video. Shortly thereafter, N.M.C. provided a second statement, in which he admitted to recording the fight.

N.M.C. was cited for disorderly conduct – creates a hazardous or physically offensive condition. On August 15, 2016, a magisterial district judge held a summary trial and found N.M.C. guilty. On September 7, 2016, N.M.C. appealed to the court of common pleas.

On January 6, 2017, the trial court held a de novo trial. At trial, Assistant Principal Maholtz testified that he was alarmed because the fight

_____

[2] Both participants, N.M.C., and some of the other students present for the fight were disciplined by the school.

occurred in a restroom where there are "many safety hazards" and that there had been a "rash of these incidents prior to this one." N.T., 1/6/17, at 10. Maholtz also testified that this was the first such incident that had been video-recorded, that it was not common to see students video-record fights, and that the administration was attempting to "prevent these [incidents] from happening due to the national trend." Id. at 16-17.

N.M.C. testified in his own defense. He stated that went to the restroom to watch the fight, that he had not planned in advance to record the fight, that he did not publish the video on social media, and that he did not intend to cause or promote more fights. Id. at 20-21. When asked why he had recorded the fight, N.M.C. said he wanted to have evidence that he was not fighting. Id. at 23. He further stated that he text-messaged the video only to his girlfriend and to one other student, id., and that he did not show the video to anyone else. Id. at 24, 26.

N.M.C. also presented the testimony of one of the participants, who stated that he did not know the fight was being recorded, that he did not tell anyone he was going to fight the other student, and that N.M.C. entered the bathroom right before the other combatant entered. Id. at 29-31.

In closing, N.M.C.'s counsel argued that the Commonwealth had failed to prove the creation of a hazardous or physically offensive condition. Id. at 32-33. The Commonwealth's closing argument was as follows:

> This case is very straight[-]forward. I don't think there
> is much of dispute about what happened in this case. For

me personally, I can see why this type of behavior shouldn't be tolerated.

I can see why it does create a hazardous condition. It encourages fighting. It promotes fighting. It encourages these videos to be spread around and kids to be embarrassed by this type of behavior, like maybe getting beat up in the video or something like that and having it posted online or in text messages like in this case, I think it entices individuals to get in fights. It makes them look tough. And that's why, I guess, overall, I would ask the Court to find [N.M.C.] guilty here today.

Id. at 33.

At the conclusion of the trial, the trial court found N.M.C. guilty:

Okay. Well, it has been a long time since I have been in high school. I suppose back at that time, if there is a fight, yeah, I suppose a lot of people wanted to go see the fight.

Of course, as we get older and wiser, then we realize where there is a fight, you want to go the other direction as fast as you possibly can.

All that being said, I think the Commonwealth has proven its case. I think he is guilty of the disorderly conduct section.

Id. at 33-34. The trial court sentenced N.M.C. to 90 days' probation, 35 hours of community service, and ordered N.M.C. to pay a $100 fine and court costs.[3]

On February 3, 2017, N.M.C. timely filed a notice of appeal.

N.M.C.'s sole issue on appeal is:

Whether the lower court erred in finding [N.M.C.] guilty of disorderly conduct and that the Commonwealth presented sufficient evidence to prove the same when it[] determined that by sharing a video of the fight[, N.M.C.] committed an

_____

[3] Because N.M.C. was charged with a summary offense, rather than a misdemeanor offense, his case did not go to juvenile court. Nevertheless, given N.M.C.'s age and our disposition, we refer to him here by his initials.

- 4 -

act that created a hazardous or physically offensive condition; that sending of the video to two other teenagers recklessly created a risk of public annoyance or alarm; and that the video served no legitimate purpose?

N.M.C.'s Br. at 5 (full capitalization and trial court answer omitted).

N.M.C. argues that the evidence was insufficient to convict him of disorderly conduct – creates a hazardous or physically offensive condition. According to N.M.C., the Commonwealth failed to prove that N.M.C.'s acts of recording the fight and sending it to two people created a hazardous or physically offensive condition because "he did not do any acts which could be construed as 'public unruliness' which could or did lead to 'tumult and disorder.'" N.M.C.'s Br. at 14. N.M.C. asserts that "the Commonwealth presented absolutely no evidence that sending the video of a fight to two (2) individuals would incite danger or that this type of behavior tends to encourage or promote physical violence." Id. at 15. In addition, N.M.C. contends that the Commonwealth presented no evidence that N.M.C. sent words in those messages that would "encourage and incite violence," that the combatants in the fight "were motivated by seeing a similar video," or that possible dissemination of the video led the combatants to fight. Id. Finally, N.M.C. contends that he did not create a "physically offensive condition" because his actions were not "direct assaults on the physical senses of members of the public." Id. at 16. We agree.

Our standard of review for a sufficiency of the evidence claim is as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Rodriguez, 141 A.3d 523, 525 (Pa.Super. 2016)

(quoting Commonwealth v. Tarrach, 42 A.3d 342, 345 (Pa.Super. 2012)).

Pennsylvania's disorderly conduct statute provides as follows:

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).[4]   We have defined the relevant terms of subsection(a)(4) as follows:   "A 'hazardous condition' is a condition that involves danger or risk[,]" particularly of "injuries resulting from public disorders."  Commonwealth v. Williams, 574 A.2d 1161, 1164 (Pa.Super. 1990).   "Although a precise definition of 'physically offensive condition' is elusive, this term encompasses direct assaults on the physical senses of members of the public."  Id.

The issue in this case is whether N.M.C. created a hazardous condition or a physically offensive condition by video recording the incident and disseminating the video to two other students.   Based on our review of the record and the prosecution's theory of the case, the basis for the trial court's decision was that N.M.C created a hazardous condition by text messaging the video to two students, because the video could have been further disseminated to other students and thereby encourage future fighting.   There are only a handful of cases addressing the "hazardous or physically offensive condition" element of subsection 5503(a)(4), and this appears to be a matter of first impression in Pennsylvania.

In Williams, we overturned a conviction for disorderly conduct – creates a hazardous or physically offensive condition where the appellant drove to an apartment complex parking lot, "removed his trousers, exited his

_____

   [4] N.M.C. was charged and convicted under subsection (a)(4).   We express no opinion about whether his conduct fell within any of the other subsections.

- 7 -

car," and entered a vehicle that did not belong to him. Id. at 1162. We could

not conclude "that appellant created a significant risk or danger of injury to

anyone," reasoning that:

> [a]ppellant walked silently through a residential parking lot after midnight and entered a vacant car. His conduct was neither boisterous nor confrontational. He did not threaten any residents of the apartment house. There is no evidence that he distracted passing motorists or obstructed any exit or thoroughfare. The most serious consequence of appellant's odd behavior was that a single vehicle in the lot sustained damage to the molding around its windows. Such minor act of vandalism cannot be said to constitute a hazardous condition.

Id. at 1164. We also concluded that the appellant did not create a "physically

offensive condition":

> Although a precise definition of "physically offensive condition" is elusive, this term encompasses direct assaults on the physical senses of members of the public. A defendant may create such a condition if she sets off a "stink bomb", strews rotting garbage in public places, or shines blinding lights in the eyes of others. See Model Penal Code and Commentaries § 250.2 commentary at 347 (Official Draft and Revised Comments 1980). . . .
>
> In the instant case, appellant did not directly assault the senses of the residents of the apartment house. Appellant did not invade the residents' physical privacy. All appellant did was enter a car belonging to someone else while dressed in his underwear. Although appellant was inadvertently observed by one of the tenants, we cannot say that she was physically offended by his conduct. For some, the idea of wearing underwear in public may be morally offensive. Yet, the sight of a person in underwear is no more physically offensive than the sight of a person dressed in other eccentric costumes that from time to time come into fashion. In order to affirm appellant's conviction for disorderly conduct, we would have to stretch the words of the statute beyond all reasonable bounds.

Id. at 1164-65 (internal footnote omitted; emphasis in original).

In contrast, in Commonwealth v. Roth, 531 A.2d 1133 (Pa.Super. 1987), we concluded that a group of activists who sought to place a large piece of scrap iron on a church's altar in protest of the church's practices, despite multiple warnings by the church not to do so, created a "hazardous condition" within the meaning of section 5503(a)(4):

> The occurrences of that day were steeped in an emotionally charged atmosphere. Some members of the congregation who knew of the demonstrators' plans refrained from attending services that day. Those who attended were frightened for their safety as well as for the welfare of the young and elderly members present. The fear was grounded partly on the literature concerning the demonstration. A certain amount of apprehension was caused by fear of a reoccurrence of a "skunk oil" attack which had been visited upon the Church during a prior Christmas celebration.
>
> Accompanying the fear of many was the determination of others not to allow their services to be disrupted. Ushers were stationed at each entrance of the church building to ensure the congregation's safety. Some of these ushers expressed that they would not permit any demonstrators to enter the building. Another parishioner stationed himself at the top of the steps leading to the Church nursery so that no one could disturb the children present there.
>
> It is apparent from our reading of the record that many of the Church members felt that their Church was under siege while others were determined not to "let the battle be fought" inside their church. When Appellants proceeded to disrupt the Church services, albeit peacefully, they in reality engendered a "hazardous" condition. Appellant's conduct of moving towards the Church's property certainly created a dangerous situation in which altercations between the demonstrators and Church members could have occurred.

Id. at 1137 (internal citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence failed to prove, beyond a reasonable doubt, that N.M.C. created a hazardous or physically offensive condition. The record shows that N.M.C. recorded a fight between two students and then disseminated the video to two other students. Under these circumstances, we cannot conclude that he created "a condition that involves danger or risk" of "injuries resulting from public disorders," or a condition that assaulted the senses of members of the public. Williams, 574 A.2d at 1164.

Here, N.M.C.'s conduct did not create the sort of danger or risk that we found sufficient in Roth. At trial, Maholtz testified that although similar fights had occurred before, this was the first time that he had seen video evidence of a fight, and that the school administration was attempting to prevent this behavior "from happening due to the national trend." N.T., 1/6/17, at 16. Having viewed the video and considered its very limited dissemination, we conclude that the Commonwealth failed to show that N.M.C.'s dissemination of the video to two people created or risked creation of a "hazardous condition" within the meaning of subsection (a)(4).

Similarly, the prosecution failed to prove that N.M.C.'s dissemination of the video created or risked creation of a "physically offensive condition." We recognize that the video's subject matter may be unsettling. Nor do we discount the prosecutor's comment in closing argument that "I can see why

this type of behavior shouldn't be tolerated," at least not by school officials.[5] Nevertheless, the evidence presented does not show that N.M.C.'s dissemination of the video or its content directly assaulted the physical senses of members of public.[6]  As in Williams, while some may find the video's content morally offensive, we cannot say that its content is as physically offensive as "set[ting] off a 'stink bomb', strew[ing] rotten garbage in public places, or shin[ing] blinding lights in the eyes of others."  Williams, 574 A.2d at 1164-65.

In its opinion, the trial court concluded that the evidence was sufficient to convict N.M.C.:

> [t]he real issue here is not so much that [N.M.C.] took the violent and graphic video, but that he, thereafter, distributed it to two other individuals via text message. [N.M.C.] was well aware that by sending the video to other individuals, there was a high risk of the video becoming subsequently available to the public.  Further, had the video become public, it certainly could have incited danger, as this type of violent video tends to encourage and promote physical violence, especially amongst adolescents.[7]

_____

[5] We recognize that video recording of fights in schools has become an issue for school administrations across the country.  See, e.g., Bill would make recording and posting fight videos illegal, CBS News, 2/19/16, available at  https://www.cbsnews.com/news/bill-would-make-recording-and-posting-fight-videos-illegal (reporting on proposed legislation in Illinois to criminalize recording fights with purpose of sharing those videos online).

[6] We leave for another day the question whether wider dissemination of such material on social media networks could create a hazardous condition within the meaning of subsection 5503(a)(4).

[7] We also recognize that the trial court's decision rests in part on the fact that N.M.C. video recorded this fight in school and sent the video to two

> Therefore, the Court believes that [N.M.C.]'s distribution of the video engendered danger or the risk of additional fights. Further, because [N.M.C.] recognized that sharing this violent and graphic video could have resulted in its availability to the public, the Court believes [N.M.C.] recklessly created a risk of public annoyance or alarm.

Opinion Pursuant to PA. R.A.P. 1925(a), 3/30/17, at 3. We disagree.

The trial court's conclusion stretches the disorderly conduct statute too far. The trial court posits that because N.M.C. knew the initial two recipients could have further disseminated his video, N.M.C. knew that the video could have incited other students to fight. The Commonwealth's evidence, however, only shows that N.M.C. disseminated the video to two other students via text message. The Commonwealth did not present the testimony of those recipients, let alone any evidence that they were personally offended by the video's contents or that they even considered further dissemination.[8] Accordingly, the evidence does not show that N.M.C.'s dissemination of the video created a condition involving danger or risk of injury to others.

We are reminded that

> [t]he offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definitive objective, it is intended to preserve the

---

schoolmates. While we understand the concerns of school administration, see supra, note 5, from a sufficiency perspective our analysis would not be different if reviewing a similar incident involving adult patrons at a bar. We also note that no one suggests that this incident, and N.M.C.'s role in this incident, did not warrant school discipline.

[8] As noted above, one of these students showed the video to Assistant Principal Maholtz.

public peace; it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clear outlined circumference.

Commonwealth v. Hock, 728 A.2d 943, 947 (Pa. 1999) (quoting Commonwealth v. Greene, 189 A.2d 141, 145 (Pa. 1963)).  While we do not condone the behavior of N.M.C. or his classmates, we conclude that the evidence before the trial court was insufficient to prove that N.M.C. created a hazardous or physically offensive condition.

Judgment of sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2017