J-S60039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
             v.                :
                               :
                               :
SIDNEY NATHAN MICHAELS        :
                               :
          Appellant          :    No. 223 MDA 2019

Appeal from the Judgment of Sentence Entered December 21, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002913-2017

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED NOVEMBER 26, 2019**

Sidney Nathan Michaels (Michaels) appeals from the judgment of sentence imposed in the Court of Common Pleas of Dauphin County (trial court) after his jury conviction[1] of Murder of the Second Degree, Robbery, and Conspiracy.[2] We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The jury found Michaels not guilty of murder in the first degree, 18 Pa.C.S. § 2502(a), and Carrying a Firearm Without a License, 18 Pa.C.S. § 6106(a)(1).

[2] 18 Pa.C.S. § 2502(b), 3701(a)(1)(i), and 903(a), respectively.

**I.**

We take the following factual background and procedural history from the trial court's May 8, 2019 opinion and our independent review of the certified record. On April 27, 2017, the Commonwealth arrested and charged Michaels for the April 25, 2017 murder and robbery of the victim, Kodi Flanagan. At trial, the Commonwealth presented testimony from four witnesses, co-defendant Sadia Bretznepe, Saeed Christiaan Afshar, Stephen Wentze, and co-defendant Dylan Beard.[3]

Mr. Flanagan was a drug-dealer who owed Michaels money. (**See** N.T. Trial, 12/10-12/18, at 185). Mr. Beard had set up Mr. Flanagan with a drug supplier so he could sell marijuana, but Mr. Flanagan failed to pay for the drugs that were fronted to him. (**See id.** at 183). Mr. Beard and Michaels decided to confront Mr. Flanagan about these issues approximately one week before he was killed. (**See id.** at 186).

In April 2017, Michaels and Mr. Beard contacted Ms. Bretznepe, a long-time friend of Mr. Flanagan's, to get her assistance in arranging a meeting with him under the guise of a drug deal because they knew he would not trust them if they attempted to do so. (**See id.** at 186-87). Michaels contacted

---

[3] Ms. Bretznepe pleaded guilty in connection with the robbery and murder of Mr. Flanagan in exchange for a sentence of not less than five nor more than twelve years' incarceration. Mr. Beard entered a guilty plea for the murder, robbery, and conspiracy to commit robbery, and received an agreed-upon sentence of forty years' incarceration.

Ms. Bretznepe on Snapchat to see if she knew how to reach Mr. Flanagan. (*See id.* at 42). She indicated she did not, but two days later, Michaels again contacted her and offered to pay her for any information she had about how to locate Mr. Flanagan because he owed Michaels and Mr. Beard money. (*See id.* at 42-43). After Ms. Bretznepe explained she did not know how to contact Mr. Flanagan and was not interested in Michaels' money, Michaels did not make any further effort to contact her. However, the next day (the day of the murder), Ms. Bretznepe engaged in a video chat with Mr. Beard; during which Michaels was in the background directing Mr. Beard to tell Ms. Bretznepe the specific details of location and time for the drug deal with Mr. Flanagan. (*See id.* at 45-48).

Mr. Afshar was friends with Mr. Beard and met Michaels through him the day before the shooting. (*See id.* at 79, 81). That day, Mr. Beard advised Mr. Afshar that Mr. Flanagan owed him money, and that he and Michaels intended to find him to get it back. (*See id.* at 84-85).

The next day (the day of the incident), Mr. Afshar agreed to serve as their protection in this plan. (*See id.* at 85-86). He picked up Michaels and Mr. Beard from each of their residences and the men drove around until Mr. Afshar dropped them off near Mr. Beard's home at approximately 4:00 p.m. (*See id.* at 88-90, 98). During a series of texts messages with Mr. Beard shortly thereafter, Mr. Afshar discovered that Michaels planned to bring a gun to the meeting with Mr. Flanagan. (*See id.* at 107-08). However, Mr. Beard

did not think that the gun would be used because the plan was to ambush Mr. Flanagan, attack him, and take all of the items in his possession, not shoot him. (*See id.* at 195-96).

Later that evening, Mr. Afshar met Mr. Beard and Michaels near the agreed-upon location. (*See id.* at 114, 116). Mr. Afshar walked around on his own looking for Mr. Flanagan before he observed Mr. Beard and Michaels approach Mr. Flanagan's vehicle, Mr. Beard pull him out, and Mr. Flanagan attempt to run away. (*See id.* at 118-19, 203). When Mr. Beard punched Mr. Flanagan in the back of the head to keep him from escaping, Mr. Afshar and Mr. Beard witnessed Michaels shoot Mr. Flanagan twice from the driver's side of the vehicle, before then assaulting him and going through his pockets. (*See id.* at 120, 204-05). Mr. Beard also went through Mr. Flanagan's pockets. (*See id.* at 123). Mr. Beard then ran away and Michaels left the scene with Mr. Afshar in his vehicle. (*See id.* at 123-24, 204-05). After dropping Michaels off, Mr. Afshar called 911 to report the shooting. (*See id.* at 129-31). Michaels and Mr. Beard later called Mr. Wentze for a ride and Michaels advised him that Mr. Flanagan had been shot and might be dead. (*See id.* at 171-72).

Video surveillance of a portion of the scene showed a person in light-colored khaki pants like those worn by Michaels approach the driver's side of Mr. Flanagan's vehicle. (*See id.* at 209-10). An individual dressed in all black

was near him. (**See id.** at 210). Mr. Beard identified the men as Michaels and Mr. Afshar, respectively. (**See id.** at 209-10).

At the conclusion of trial, the jury convicted Michaels of the previously mentioned charges. On December 21, 2018, the trial court sentenced him to a mandatory term of life imprisonment without the possibility of parole.[4] Michaels filed post-sentence motions challenging his sentence and the weight and sufficiency of the evidence to support his conviction, which the trial court denied. Michaels timely appealed and he and the court complied with Rule 1925. **See** Pa.R.A.P. 1925.

## II.

## A.

Michaels first contends that a mandatory sentence of life without the possibility of parole violates the United States and Pennsylvania Constitutions' proscription against cruel and unusual punishment.[5] In essence, he maintains

---

[4] Pursuant to Section 1102(b) of the Crimes Code:

> **Second Degree.** Except as provided under section 1102.1, a person who has been convicted of murder of the second degree, of second degree murder of an unborn child or of second degree murder of a law enforcement officer **shall** be sentenced to a term of life imprisonment.

18 Pa.C.S. § 1102(b) (emphasis added).

[5] **See** U.S. Const. amend. VIII; Pa. Const., Art. I, § 13.

that the trial court's lack of discretion in his case resulted in a "disproportionate, excessive" sentence.[6] (Michaels' Brief, at 30; *see id.* at 13-30).

However, in **Commonwealth v. Cornish**, 370 A.2d 291 (Pa. 1977), our Supreme Court rejected a nearly identical argument as the one presented here, holding:

> Under the present statutory scheme, the mandatory sentence is imposed only in cases of murder of the second degree, or felony murder. It can hardly be said that the circumstances wherein a murder is committed during the commission of a felony vary to such an extent that the legislative determination to mandate one penalty is unreasonable.

*Cornish*, *supra* at 293 n.4.

Based on this precedent, Michaels' claim that his mandatory sentence was illegal because it constituted cruel and unusual punishment and is disproportionate to the facts presented lacks merit.[7]

---

[6] Because Michaels' constitutional claim raises a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Omar**, 981 A.2d 179, 185 (Pa. 2009); **Commonwealth v. Henkel**, 938 A.2d 433, 446 n.14 (Pa. Super. 2007), *appeal denied*, 955 A.2d 356 (Pa. 2008).

[7] As observed by the Commonwealth, to the extent that Michaels' sentencing challenge could in any way be interpreted as a challenge to the court's exercise of discretion, any review would be inappropriate where he failed to include a Rule 2119(f) statement in his brief. (**See** Commonwealth's Brief, at 5).

**B.**

Next, Michaels argues that the evidence was insufficient[8] to convict him of second-degree murder because it "nearly all comes from a corrupt source," *i.e.*, his co-defendants, and was contradictory. (Michaels' Brief, at 34; *see id.* at 30-35).[9]

Section 2502 of the Crimes Code, provides, in pertinent part: "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). Pursuant to Section

_____

[8] In reviewing the sufficiency of the evidence, "[w]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. N.M.C.*, 172 A.3d 1146, 1149 (Pa. Super. 2017) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (citation omitted). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* (citation omitted). "The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* (citation omitted).

[9] As an initial matter, we observe that this argument attacks the credibility of the witness testimony, which goes to the weight of the evidence, not its sufficiency. *See Commonwealth v. Sherwood*, 982 A.2d 483, 492 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

3701(a)(1)(i), "[a] person is guilty of robbery if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 2502(b)(i). Finally, Section 903(a) states that "[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime . . . or agrees to aid such other person or persons in the planning or commission of such crime[.]" 18 Pa.C.S. § 903(a).[10]

Instantly, the Commonwealth provided testimony from Mr. Beard that he and Michaels specifically sought out Ms. Bretznepe in an effort to locate Mr. Flanagan to rob because he owed them money. Ms. Bretznepe similarly testified that both Michaels and Mr. Beard contacted her in an attempt to locate Mr. Flanagan. Michaels was present for the video chat when Ms. Bretznepe spoke with Mr. Beard about robbing Mr. Flanagan. Mr. Afshar testified that there was a plan between Mr. Beard and Michaels to find and rob Mr. Flanagan because he owed them money, and that he was to act as their protection. There was surveillance video that corroborated Mr. Afshar's story

_____

[10] "Proving the existence of such an agreement is not always easy, and is rarely proven with direct evidence. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Jordan*, 212 A.3d 91, 96 (Pa. Super. 2019) (citations and internal quotation marks omitted).

that the men went to the Harrisburg Mall earlier in the day of the murder.  Mr. Beard and Mr. Afshar were aware that Michaels was bringing a firearm to the meeting with Mr. Flanagan.  Finally, Mr. Beard and Mr. Afshar observed Michaels shoot Mr. Flanagan before he went through his pockets and left the scene.

Viewing the foregoing in the light most favorable to the Commonwealth, we conclude that the trial court properly found that it provided sufficient evidence to prove beyond a reasonable doubt that Michaels committed second degree murder, robbery, and conspiracy to commit robbery.  **See N.M.C.**, supra at 1149.  Michaels' second issue lacks merit.

## C.

In his third and final issue, Michaels argues that the verdict was against the weight of the evidence because it established that Mr. Beard, Ms. Bretznepe and Mr. Afshar arranged for and executed the robbery and murder of Flanagan.[11]  (**See** Michaels' Brief, at 36-39).  Aside from the direct evidence

---

[11] "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Leatherby**, 116 A.3d 73, 82 (Pa. Super. 2015) (citation omitted).  "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." **Id.** (citation omitted).  "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.** (citation omitted).

that Michaels fired the shots that killed Mr. Flanagan, the trial court set forth a detailed recitation of the "abundant" testimony presented by the Commonwealth to establish that Michaels committed the crimes charged, which we need not repeat here, and that it properly exercised its discretion to find that the verdict was not against the weight of the evidence. (Trial Court Opinion, 5/08/19, at 10; *see id.* at 7-10).

Based on our independent review of the record and the trial court's detailed recitation of the facts supporting its finding, we discern no abuse of discretion. *See Leatherby*, *supra* at 82. Hence, Michaels' third issue does not merit relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019