J-A27011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL SCOTT LEHMAN :
:
Appellant : No. 199 MDA 2024

Appeal from the Judgment of Sentence Entered January 15, 2024
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000117-2023

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: MARCH 21, 2025**

Michael Scott Lehman appeals from the judgment of sentence, entered
in the Court of Common Pleas of Bradford County, following his summary
convictions of two counts of disorderly conduct.[1]  After review, we affirm.

On October 12, 2022, Lehman went to the Bradford County Sheriff's
Office to complain that he was not permitted to photograph the chandelier in
the atrium of the courthouse.[2]  The Bradford County Sheriff's Office shares a
lobby with the Domestic Relations Office and the lobby itself is open to the
public at all times during business hours.  The employee workspace of the

---

[1] 18 Pa.C.S.A. §§ 5503(a)(2), (4).

[2] The Bradford County Courthouse has an administrative order prohibiting
cellular phones and electronic devices that are capable of recording or taking
pictures; however, passes can be obtained to allow temporary use of such
devices.  ***See*** Trial Court Opinion, 4/14/24, at 2-3.

respective offices is behind bulletproof glass panels, bulletproof walls, and heavy security doors. *See* N.T. Non-Jury Trial, 10/18/23, at 5, 17.

Lehman entered the shared lobby and began looking at the posted sheriff's sales. Kaitlyn Renzo, the administrative assistant at the Bradford County Sheriff's Office, asked Lehman if he needed any help and Lehman responded that he wanted to speak to someone else. During this brief exchange, Renzo answered a phone call and asked Lehman to wait a moment. Lehman interrupted Renzo's phone call multiple times until Sheriff's Deputy Donald Stringham entered the lobby and began speaking with Lehman. Lehman had his cell phone out and appeared to be recording the conversation.

Deputy Stringham spoke with Lehman regarding the courthouse's cell phone policy and informed him that the policy was governed by an administrative order signed by the President Judge, not a law. Lehman insisted that the cell phone policy was an illegal law infringing on his First Amendment rights. Deputy Stringham informed Lehman that he could file a complaint or seek permission to photograph the chandelier from the Court Administration Office. Lehman did not do so, and instead informed Deputy Stringham that he was being recorded. Deputy Stringham told Lehman that he needed to leave and stop recording as it was not permitted under the policy. During this conversation, Lehman began raising his voice.

At some point during the confrontation, Chief Deputy Brian Wibirt exited his office and entered the lobby to calm Lehman down. Chief Deputy Wibirt provided Lehman with a physical copy of the policy. Unfortunately, Chief

Deputy Wibirt was unable to defuse the situation and Lehman continued shouting and threatened that he would sue the deputies and demanded their badge numbers. Lehman also requested that the deputies "storm the steps" of the courthouse and demand that cell phones be permitted. *See id.* at 33-34. Chief Deputy Wibirt and Deputy Stringham spoke with Lehman for over 15 minutes, during which Lehman continuously shouted.

Lehman was shouting so loudly that Renzo and administrative assistants Taylor Kline and Melissa DeFelice[3] were unable to hear people on the other end of their respective phonecalls. Renzo testified that she was frightened and was preparing to call for an emergency response. *See id.* at 8. DeFelice also testified that she was frightened due to the ongoing argument. *See id.* at 49-54.

Christopher Dunham, Roxanne Bishop, and Vonda Huffman, all employees of the Bradford County Domestic Relations Office, overheard Lehman's yelling and were unable to perform their duties during the argument. Dunham, Bishop, and Huffman each have individual offices approximately 50 feet from the lobby and those offices are behind the same bulletproof glass, walls, and security door as DeFelice's desk. Bishop testified that she was frightened and felt she could not leave the office during the argument. *See id.* at 55-56.

_____

[3] Kline is an administrative assistant at the Bradford County Sheriff's Office and DeFelice is an administrative assistant at the Bradford County Domestic Relations Office. Renzo, Kline, and DeFelice typically answer phone calls throughout the day to assist members of the public.

Due to Lehman's ongoing argumentative behavior and shouting, his refusal to leave, and the above-described disruptions, the deputies arrested Lehman and charged him with the above-mentioned offenses. Shortly after Lehman's arrest, the deputies spoke with Chelsea Lehman (Chelsea), Lehman's daughter. Chelsea informed the deputies that Lehman had left the house that morning to take a picture of the courthouse chandelier and that Lehman knew about the courthouse cell phone policy. *See id.* at 58. Chelsea testified that Lehman intended to cause a scene with the deputies over the policy. *See id.* at 58-59.

On October 18, 2023, Lehman proceeded to a non-jury trial, after which the trial court found him guilty of the above-mentioned summary offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On January 15, 2024, the trial court sentenced Lehman to five to ninety days in jail, followed by ninety days' probation. Lehman was further sentenced to pay the costs of prosecution and fines. The trial court stayed Lehman's sentence pending the outcome of his appeal.

Lehman filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Lehman now raises the following claims for our review:

> 1. Whether the trial court erred in convicting [Lehman] of violating 18 Pa.C.S.[A. §] 5503(a)(4) where the evidence of record failed to establish that [Lehman], with intent to cause public inconvenience, annoyance or alarm, or recklessly creating

- 4 -

a risk thereof, created a hazardous or physically offensive condition.

2. Whether the trial court erred in convicting [Lehman] of violating 18 Pa.C.S.[A. §] 5503(a)(2) where the evidence of record failed to establish that [Lehman], with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, made unreasonable noise.

3. Whether the trial court erred in imposing a sentence of incarceration and probation which was excessive under the circumstances.

Brief for Appellant, at 4.

In his first two claims, which we address together, Lehman challenges the sufficiency of the Commonwealth's evidence for his summary disorderly conduct convictions. *See id.* at 10-16. Lehman argues that his behavior did not pose any danger, and that he was compliant with orders to not photograph the courthouse chandelier. *See id.* at 10. Lehman contends that his argumentative behavior did not place any person in physical danger. *See id.* at 10-12. Lehman further posits that the Commonwealth did not present any evidence that he intended to cause public inconvenience or annoyance or alarm, but that he was "merely trying to resolve a complaint over a policy which did not allow him to take a photograph of a chandelier in a public building." *Id.* at 12. Lehman avers that his voice was not "extremely loud," and that his actions did not create "a physically offensive condition which served no legitimate purpose." *Id.* at 13. Lehman claims that "[t]here was no evidence presented as to the level of the noise" and that the Commonwealth failed to show that, even if there were noise, the noise rose

- 5 -

beyond an acceptable level for the lobby. *Id.* at 15-16. Additionally, Lehman asserts that he had a legitimate purpose in exercising his First Amendment rights to disagree with the courthouse policy and, thus, the trial court erred in concluding he had no legitimate purpose in violation of section 5503(a)(4). We disagree.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence[,] produced is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Crimes Code defines summary disorderly conduct, in relevant part, as follows:

**§ 5503. Disorderly Conduct**

**(a) Offense defined.--**A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance[,] or alarm, or recklessly creating a risk thereof, he:

* * *

(2) makes unreasonable noise; [or]

* * *

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**(b) Grading.--**An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise[,] disorderly conduct is a summary offense.

**(c) Definition.--**As used in this section[,] the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. §§ 5503(a)(2), (4), (b)-(c).

Our Supreme Court has cautioned that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people" and "it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999) (citation omitted). Rather, the offense of disorderly conduct has the "specific purpose . . . to preserve the public peace." *Id.* "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Id.* at 946 (citation omitted).

This Court has explained that "what constitutes the *actus reus* of unreasonable noise under the [] statute is determined solely by the **volume of the speech**, not by its content." ***Commonwealth v. Forrey***, 108 a.3d 895, 898 (Pa. Super. 2015) (citations and quotations omitted). "Pennsylvania law defines unreasonable noise as not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." ***Commonwealth v. Gilbert***, 674 A.2d 284, 287 (Pa. Super. 1996) (citation omitted).

In ***Commonwealth v. Maerz***, 879 A.2d 1267 (Pa. Super. 2005), this Court concluded that the defendant's single profane outburst yelled at a neighbor at 9:45 p.m. was insufficient unreasonable noise to constitute disorderly conduct. ***See id.*** at 1270. This Court concluded that the Commonwealth had failed to show the outburst jeopardized public peace, or that the noise was "inconsistent with the residential neighborhood's tolerance levels or standards [where n]o evidence was offered as to why the public peace in this particular neighborhood could not survive a passing, albeit very loud, vocal noise during evening hours." ***Id.*** at 1271.

In ***Gilbert***, ***supra***, this Court concluded that the defendant's disagreement with a police officer's towing his neighbor's car did not constitute unreasonable noise. ***See Gilbert***, 674 A.2d at 285-87. Rather, this Court held that the evidence in ***Gilbert*** failed to demonstrate that the defendant's outburst was "inconsistent with the neighborhood tolerance or standards." ***Id.***

However, in **Commonwealth v. Alpha Epsilon Pi**, 540 A.2d 580 (Pa. Super. 1988), this Court concluded that a college fraternity generated unreasonable noise where its late-night partying could be heard from fifty yards away. **See id.** at 583. In particular, this Court noted that, due to the distance at which the noise could be heard, a trier of fact could infer that the noise level was unreasonable. **See id.**

Regarding "physically offensive condition" this Court has stated that "[a]lthough a precise definition of 'physically offensive condition' is elusive, this term encompasses direct assaults on the physical senses of members of the public." **Commonwealth v. Williams**, 574 A.2d 1161, 1164 (Pa. Super. 1990). In **Williams**, we explained that a defendant can create a physically offensive condition if he invades the physical privacy of another in an extreme manner such as setting off a stink bomb, strewing rotting garbage in public places, or shining blinding lights in the eyes of others. **See id.** Conduct that is merely morally offensive, but does not affect the physical senses of another, does not rise to the level of disorderly conduct. **See id.** (holding that wearing underwear in public may be morally offensive, but that act, standing alone, is not physically offensive); **see also Commonwealth v. N.M.C.**, 172 A.3d 1146, 1151-52 (Pa. Super. 2017) (holding that recording and disseminating footage of fight between two students was morally offensive but did not create physically offensive condition).

A "legitimate purpose" refers to "conduct [that] is lawful and constitutionally protected." **Commonwealth v. Roth**, 531 A.2d 1133, 1137

(Pa. Super. 1987). Generally, a citizen who exercises their First Amendment rights has a legitimate purpose. *See id.* at 1138 (noting that public streets and sidewalks are time-honored forums for constitutionally protected assembly and protest). However, in *Roth*, this Court concluded that the defendants had "abandon[ed] the protection afforded by the First Amendment [and its legitimate purpose when] they moved to gain entry [into] a church in which they were adamantly unwelcome [in order] to inflict their viewpoint on its congregation." *Id.* at 1137-39. This Court held that the defendants' actions "transgressed from [constitutionally protected] peaceful protest to civil disobedience" and therefore lacked a legitimate purpose under the disorderly conduct statute. *Id.* at 1137-38.

Lehman's claims are belied by the record. In its Rule 1925(a) opinion, the trial court concluded that the shared lobby of the Bradford County Sheriff's Office and Domestic Relations Office is a public space as contemplated by section 5503(c). *See* Trial Court Opinion, 4/14/24, at 6. Indeed, based upon our review of the foregoing, we agree with the trial court that a shared public lobby serving two government offices, where members of the public may freely come and go, is a public space as contemplated by section 5503(c). *See id.*

At trial, Chelsea testified that Lehman went to the courthouse with the intent to "cause a fuss" over the courthouse cell phone policy. *See* N.T. Non-Jury Trial, 10/18/23, at 58-59. Lehman believed that his actions would inconvenience and irritate the deputies. *See id.* Even after deputies informed

Lehman that he could file an official complaint or seek permission to photograph the chandelier in the Court Administration Office, Lehman continued to argue and raise his voice in the shared lobby of the Bradford County Sheriff's and Domestic Relations Offices. *See id.* at 21 (Deputy Stringham testifying he informed Lehman how to file official complaint with Court Administration); *id.* at 32-33 (Chief Deputy Wibirt testifying he provided Lehman with physical copy of courthouse cell phone policy). Further, Renzo, Bishop, Dunham, Huffman, and DeFelice all testified that their work was disrupted for the entire duration of the argument, approximately 15 minutes. *See id.* at 7-11 (Renzo testifying she could not hear callers on other end of phone and was prepared to call emergency response); *id.* at 42-43, 45-46, 54-56 (Bishop, Dunham, and Huffman testifying their offices, within Domestic Relations Office, are approximately 50 feet from lobby, but Lehman's voice was so loud they could not work, and Bishop felt it was unsafe to leave her office); *id.* at 49-54 (DeFelice testifying Lehman was so loud she was frightened and could not take phone calls because she could not hear callers). Additionally, Renzo testified that the offices were separated from the lobby by bulletproof glass, bulletproof walls, and heavy security doors. *See id.* at 5, 17. Renzo stated that, despite the thickness of the glass and walls separating her from Lehman's yelling, she was unable to hear conversations at normal speaking volumes. *See id.*

Based upon the above, it is clear that Lehman exhibited the requisite intent to commit disorderly conduct. *See* 18 Pa.C.S.A. § 5503(a). Further,

the reactions and testimony of DeFelice, Renzo, Dunham, Huffman, and Bishop that they felt frightened and were contemplating calling emergency services, and that they could hear Lehman shouting even in the back offices, clearly evinces that Lehman's behavior and ongoing shouting were **not** common or acceptable for the shared lobby. *See Alpha Epsilon Pi*, *supra*; *Cf. Gilbert*, *supra*. This same evidence, coupled with the fact that Lehman's shouting could be heard through the bulletproof glass and walls, demonstrates that Lehman's shouting was of an unreasonable level as contemplated by subsection 5503(a)(2). *See Alpha Epsilon Pi*, *supra*; *Forrey*, *supra*.

Additionally, our case law supports a conclusion that the sheer volume of Lehman's voice and its duration can also be considered a physically offensive condition. *See Williams*, *supra*; *N.M.C.*, *supra*. Where Lehman's voice was so loud for a continuous episode that it prevented employees from hearing people on the phone through **bulletproof glass**, which typically mutes the volume of normal conversations, Lehman created a physically offensive condition. *See id.*; *see also* N.T. Non-Jury Trial, 10/18/23, at 5, 17. Further, Lehman's actions clearly caused public inconvenience by hindering the ability of several employees' to assist members of the public.

Finally, we conclude that Lehman's actions were not shielded by the First Amendment because, while he is permitted to protest and file complaints, he merely had to go across the street to the Court Administration Office to do so. *See Commonwealth v. Bradley*, 232 A.3d 747, 754 (Pa. Super. 2020) (holding First Amendment rights are subject to reasonable time, place, and

manner restrictions). Furthermore, even if Lehman's initial actions were constitutionally protected,[4] Lehman abandoned that constitutional protection and, thus, his legitimate purpose. **See Roth**, **supra**. In reaching this conclusion, we emphasize that the deputies had, at this point, provided Lehman with a copy of the courthouse policy, informed Lehman that he could either file a formal complaint or seek formal permission to photograph the chandelier at the Court Administration Office, informed Lehman several times to leave as he was disrupting their work, and informed Lehman that the proper place for his sought-after recourse was the Court Administration Office. **See** N.T. Non-Jury Trial, 10/18/23, at 21, 32-33; **see also id.** at 21, 23-24 (Deputy Stringham informing Lehman Court Administration Office was across street, and that Lehman needed to leave lobby because he was disrupting their work); **id.** at 25, 35-36 (Chief Deputy Wibirt advised Lehman "several times" to leave and that, due to his ongoing behavior, if Lehman refused to leave, Chief Deputy Wibirt would arrest him for disorderly conduct, and Lehman refused to leave); **id.** at 34 (Chief Deputy Wibirt informed Lehman that Sheriff's Office only enforces courthouse policy and cannot change it). Thus, Lehman's continuous and voluminous shouting served no legitimate purpose, not even the purpose he purportedly wished to pursue, which was

---

[4] We note that the trial court concluded Lehman's actions far exceeded those necessary to fulfill his stated desire of filing a complaint. **See** Trial Court Opinion, 4/14/24, at 7 (concluding Lehman's intention to create "a fuss" combined with shouting increasingly louder at deputies and ignoring deputies' advice on how to file formal complaint or seek formal permission to photograph chandelier, demonstrated Lehman had no legitimate purpose).

lodging a complaint about the courthouse cell phone policy. *See Roth*, *supra*. Based upon the foregoing, we conclude that the Commonwealth presented sufficient evidence to sustain Lehman's convictions of summary disorderly conduct. *See Smith*, *supra*.

In his third claim, Lehman challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. *See Commonwealth v. Austin*, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Lehman filed a timely notice of appeal. We note that, in summary appeals, an appellant is not permitted to file a post-sentence motion. *See* Pa.R.Crim.P. 720(D) ("There shall be no post-sentence motion in summary appeals following a trial *de novo* in the court of common pleas. The imposition of sentence immediately following a determination of guilt at the conclusion

of the trial *de novo* shall constitute a final order for the purposes of appeal."). Nevertheless, an appellant in a summary proceeding is still required to preserve their discretionary aspects of sentencing challenges in an oral motion before the trial court at the time of sentencing. **See Commonwealth v. Dixon**, 66 A.3d 794, 797 (Pa. Super. 2013) (recognizing that Rule 720(D) prohibits filing of post-sentence motion following a trial *de novo*); **see also Moury**, **supra** (providing that sentencing issue must be preserved **at sentencing** or in post-sentence motion); **Commonwealth v. Giordano**, 264 A.3d 402 (Pa. Super. 2021) (Table)[5] (challenge to discretionary aspects of sentence following summary trial *de novo* must be preserved at sentencing hearing or be waived on appeal).

Instantly, Lehman did not raise any objection at sentencing other than asking that his sentence be stayed pending appeal. **See** N.T. Sentencing Hearing, 1/15/24, at 9-10 (following trial court's pronnouncement of sentence, Lehman's counsel acknowledged Rule 720(D) prohibits post-sentence motion in summary proceedings and requested stay of sentence pending appeal). Thus, Lehman's sentencing claim is waived for failure to

---

[5] **See** Pa.R.A.P. 126(b) (non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value).

raise it before the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[6]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025

---

[6] Moreover, we observe that Lehman has failed to include the requisite Rule 2119(f) statement in his appellate brief; however, the Commonwealth, in failing to file a brief, did not object to this omission. **See Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (where appellant has not included Rule 2119(f) statement and appellee has failed to object, "this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate or enforce the requirements of Rule 2119(f) *sua sponte*") (citations omitted).