J-S04006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK WOOLFORK | : | |
| | : | |
| Appellant | : | No. 959 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007127-2018

BEFORE: BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY BOWES, J.: **FILED MAY 16, 2024**

Appellant Patrick Woolfork appeals from the judgment of sentence of eighteen to thirty-six years of incarceration arising from his conviction of murder in the third degree. We affirm.

In the early morning hours of April 1, 2017, City of Philadelphia Police Officer Robert Haberle responded to North 2nd Street for a reported shooting and found the body of Elliot Cortes on the sidewalk. No eyewitnesses came forward, and the Commonwealth's case relied entirely on video surveillance footage from nearby businesses. Detective Thorsten Lucke examined hours of footage and compiled it into a narrative, which was shown to the jury. The trial court aptly summarized its content:

> The footage depicts two males walk up to J Lee Cold Beer, located at 201 Westmoreland Street, at 12:52 a.m. One male enters the store and purchases something, while the other waits directly outside. The quality of the video inside the store is very clear. One can readily see that the male who enters the store is

[Appellant], who has no head/face covering and is wearing a long black coat, dark blue jeans, and black sneakers with a triangular logo and red toe cap. The other male ("unknown male") standing outside is observed wearing an oversized black coat, a black hoodie with a hat, dark blue jeans, and all black shoes. [Appellant] exits the store at 12:54 a.m., returning to the unknown male. The two males stand on the sidewalk interacting for a few minutes when [Cortes] exits the store at 12:58 a.m., and all three males begin interacting.

[Cortes] hands an item to [Appellant] who raises it to his nose, and then hands it to the unknown male, who raises it to his nose. While this is occurring, another male exits and closes the store, turning off the lights and lowering the gate, before entering his vehicle and driving off. [Cortes], [Appellant], and the unknown male interact with each other in front of the store for two minutes. [Cortes] then walks off, by himself, up North 2nd Street at 1:00 a.m. [Appellant] and the unknown male remain on the corner for approximately twenty seconds and then proceed to follow [Cortes]. [Appellant] raises his arm in some sort of gesture and [Cortes] turns around and starts walking back toward [Appellant] and his companion.

The video from the camera which covers the 3300 block of North 2nd Street is a grainy, black and white video. This video begins where [Cortes], who is located towards the middle of the block, turns around, and starts walking back toward [Appellant] and his companion.

When the three males meet up, they walk back toward the middle of the block at 1:01 a.m. This middle section of 2nd Street is unlit, so one can only see dark figures moving about. After two minutes in the middle of the block, only two figures can be observed, walking together, to the end of the block. At 1:04 a.m., a different camera captures the figures as they approach the end of the block, revealing them to be [Appellant] and the unknown male. [Appellant] can be observed with his head/face uncovered, wearing a long black coat and black sneakers that have a red toe cap and triangular logo. The unknown male can be observed wearing his oversized coat with a hat. [Cortes] does not leave the block. During the above events, no one else can be observed on the 3300 block of North 2nd Street.

Trial Court Opinion, 6/14/23, at 3-4.  The trial court stated that "there was some physical interaction between the three males, which is difficult to see due to the quality of the video."  *Id*. at 9.  Officer Haberle arrived on scene at 1:08 a.m.

The police asked the public for help identifying the men in addition to asking nearby police departments to view the videos.  Sergeant Michael Slaughter, employed by a police department approximately twenty-five miles from Philadelphia, watched the videos and informed detectives that he recognized Appellant from his patrol area.  Sergeant Slaughter testified at trial that he has known Appellant since approximately 2000 and opined that one of the two men in the video was Appellant.  Nobody was able to identify the unknown male.

The Commonwealth filed a criminal information charging Appellant with the following crimes: murder (ungraded), conspiracy to commit murder/robbery, robbery, prohibited possession of a firearm, carrying a firearm without a license, carrying firearms in Philadelphia, and possessing an instrument of crime.  The case proceeded to trial at which the jury was instructed that the available verdicts for homicide were not guilty, first-degree murder, or third-degree murder.[1]  The trial court instructed the jury on accomplice liability, informing the jury that "it is unknown who is the principal

---

[1] The trial court granted Appellant's motion for judgment of acquittal as to robbery.  The Commonwealth had severed the prohibited possession of a firearm charge, which was *nolle prossed* after the verdict was recorded.

and who is the accomplice. The principal is the person who actually fired the gun and who is the accomplice [*sic*]." N.T., 11/17/22, at 88. The court additionally told the jury that it could find Appellant guilty as a principal. The jury found Appellant guilty of homicide in the third degree, and not guilty of the remaining crimes. The verdict form did not ask the jury to indicate which theory of liability it accepted.

Appellant filed post-sentence motions and timely appealed from the denial thereof. He then complied with the trial court's order to file a concise statement of matters complained of, and the court authored a responsive Pa.R.A.P. 1925(a) opinion. We now address Appellant's three claims:

A. Was the evidence in this case insufficient to support a conviction for [third-]degree murder with respect to the elements of causation and malice required for [third-]degree murder?

B. Is Appellant entitled to a new trial with regard to his conviction for [third-]degree murder because the verdict of guilt is against the weight of the evidence?

C. Did the trial court err in admitting Sergeant Michael Slaughter's lay opinion testimony that Appellant was the person depicted in a surveillance camera video recording at 2nd and Westmoreland Streets?

Appellant's brief at 9.

Appellant's first claim challenges the sufficiency of the evidence to sustain the conviction for homicide in the third degree. The appellate standard of review asks "whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable

- 4 -

doubt." ***Commonwealth v. N.M.C.***, 172 A.3d 1146, 1149 (Pa.Super. 2017) (citation omitted). Our determination "of the ultimate question of evidentiary sufficiency . . . [is] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Commonwealth v. Brown***, 52 A.3d 1164 (Pa. 2012) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Richard***, 150 A.3d 504, 516 (Pa.Super. 2016) (citation omitted).

Appellant was convicted of third-degree murder, which "is defined [as] all other kinds of murder other than first[-]degree murder or second[-]degree murder. The elements of third-degree murder, as developed by case law, are a killing done with legal malice." ***Commonwealth v. Golphin***, 161 A.3d 1009, 1018 (Pa.Super. 2017) (first bracketing in original). Malice is defined as:

> A wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa.Super. 2011) (cleaned up).

Section 306[2] of our Crimes Code delineates the circumstances in which a person is criminally liable, with subsection (a) establishing that "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). One way in which a person is legally accountable for another is if he is an accomplice, as set forth by § 306(b)(3), which codifies accomplice

_____

[2] Section 306 states, in relevant part:

> **(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> **(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:
>
> > (1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;
> >
> > (2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or
> >
> > (3) he is an accomplice of such other person in the commission of the offense.
>
> **(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:
>
> > (1) with the intent of promoting or facilitating the commission of the offense, he:
> >
> > > (i) solicits such other person to commit it; or
> > >
> > > (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
> >
> > (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S. § 306 (a-c).

liability. Our Supreme Court has summarized what the Commonwealth must show to satisfy accomplice liability as follows:

> [T]wo prongs must be satisfied for a defendant to be found guilty as an "accomplice." First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004) (cleaned up).

We now turn to Appellant's argument, which focuses on "causation and malice." Appellant's brief at 31. At the outset, we note that the Commonwealth argues that any challenge to causation has been waived as Appellant "did not provide any argument concerning this element." Commonwealth's brief at 6. We disagree. Appellant is not challenging causation in the sense of disputing that a bullet caused Cortes's death, or that the act of firing a gun at Cortes's head constituted malice. Instead, Appellant's argument centers on the proposition that the unknown male is solely responsible. ***See*** Appellant's brief at 25 (arguing that the only thing the Commonwealth established was that he "was merely present at the crime scene when the shooting occurred"). Appellant therefore maintains that he

did not "cause" the death on the basis that the evidence does not warrant any inference that he shot Cortes or that he aided or assisted the unknown male.

Appellant's assertion that the evidence failed to establish that he was anything more than a mere bystander heavily relies on the jury's acquittals. He argues: "The jury found [Appellant] not guilty of [c]onspiracy. Thus, the evidence in this case was insufficient to prove beyond a reasonable doubt that the male identified as [Appellant] agreed with another person to commit murder." *Id*. at 24. Relatedly, Appellant stresses that the jury acquitted him of all weapons charges. In his view, this constitutes a "finding that [he] was not in possession of a firearm at the moment of the shooting that was the cause of the decedent's death," which in turn means "that the male identified as [Appellant] was not the shooter who caused the decedent's death." *Id*. at 24-25. Thus, Appellant claims that the jury found that he also was not the principal.

Turning to whether Appellant was properly convicted as an accomplice, Appellant argues that it is speculative whether the jury deemed Appellant guilty on an accomplice liability theory. He asserts that we and "the [t]rial [c]ourt w[ere] not privy to the jury's deliberative process" and have no way "of knowing the evidence the jury relied on, and the jury's reasoning," to determine on what basis the jury returned its verdict. Appellant's brief at 27. Echoing the foregoing points, Appellant reiterates that the Commonwealth failed to prove that he was anything other than a bystander. "[W]hat is clear is that, in the instant case, there was no evidence of any acts by the male

identified as [Appellant] that he acted as an accomplice with any other person to kill the decedent." *Id*. Appellant claims that the Commonwealth failed to offer evidence that he "acted in concert with the other male to kill the decedent." *Id*.

As noted, the verdict must be affirmed if the Commonwealth sufficiently established that Appellant, as the principal actor, maliciously caused Cortes's death. Based on the video footage evidence, that element would be met if Appellant fired the gun at Cortes's head. *See Commonwealth. v. Pigg*, 571 A.2d 438, 441 (Pa.Super. 1990) ("[I]t is well established that malice may be inferred from the use of a deadly weapon upon a vital part of the body."). Alternatively, Appellant is guilty if he was an accomplice to the shooter's malicious act of firing the gun. Presently, Appellant's claims are interrelated as he submits the jury's acquittal at the conspiracy charge is relevant to both theories of liability. We thus begin our review with the principles applicable to conspiracy.

As a prefatory matter, there is a doctrinal distinction between accomplice liability and conspiracy as a substantive crime. Conspiracy is a specific intent crime and a "conviction for conspiracy requires a specific intent 'of promoting or facilitating' the commission of a crime[.]" *Commonwealth v. Morton*, 512 A.2d 1273, 1275 (Pa.Super. 1986). While cases often refer to a conspiracy to commit a specific crime, a conspiracy is better thought of in terms of a criminal objective that the conspirators hope to achieve. *See Commonwealth v. King*, 234 A.3d 549, 569 (Pa. 2020) (concluding that,

while the Commonwealth alleged a conspiracy to "assault, murder", in truth "there was only one conspiracy in this case: an agreement to kill [the victim]."). Accomplice liability, in contrast, is a vicarious theory of liability by which a person is criminally liable for a substantive crime committed by another actor. Applied to this case, Appellant would be principally liable if he shot Cortes, and liable as an accomplice if he solicited, aided, or agreed to aid the unknown male in committing third-degree murder.

Appellant concludes that, when the jury acquitted him of the substantive crime of conspiracy, this should be viewed as a finding that there was no agreement to achieve any criminal objective, thus foreclosing any theory of vicarious liability for Cortes's murder. Furthermore, Appellant views the acquittal at the weapons charges as a binding determination that he did not have a gun and, ergo, could not have been the principal. We disagree that the conspiracy acquittal compels this Court to credit any specific factual findings for our sufficiency review.

"Inconsistent verdicts . . . are allowed to stand so long as the evidence is sufficient to support the conviction." *Commonwealth v. Miller*, 35 A.3d 1206, 1208 (Pa. 2012). Acquittals do not signal that the jury necessarily concluded the Commonwealth did not meet its burden of proof, as courts understand "that an acquittal may merely show lenity on the jury's behalf, or that the verdict may have been the result of compromise, or of a mistake on the part of the jury." *Commonwealth v. Moore*, 103 A.3d 1240, 1246 (Pa. 2014) (cleaned up). This principle alone undermines Appellant's arguments.

However, we recognize that in some circumstances acquittals are given special weight. *See Commonwealth v. Magliocco*, 883 A.2d 479, 493 (Pa. 2005) ("[S]ince the factfinder in this case specifically found that Magliocco did not commit the offense of terroristic threats, the conviction for ethnic intimidation, which requires as an element the commission beyond a reasonable doubt of the underlying offense, simply cannot stand."). Appellant's argument appears to be that conspiracy is a predicate offense of his conviction for third-degree homicide. We disagree.

First, the Commonwealth charged Appellant with conspiring with the actor to commit homicide and did not specifically list a conspiracy to commit third-degree murder. *See Commonwealth v. Fisher*, 80 A.3d 1186, 1187 (Pa. 2013) (holding that conspiracy to commit third-degree murder is a cognizable offense). Indeed, the jury instructions and closing arguments made it clear that the Commonwealth alleged that Appellant and the unknown male specifically intended to kill Cortes. Therefore, the jury could have simply determined that a conspiracy existed, but that it did not extend specifically to killing Cortes. In that case, there would not be an inconsistent verdict, as conspiracy is a specific intent crime.

Second, even if the Commonwealth had charged a conspiracy to commit homicide in the third-degree, accomplice liability is still distinct from conspiratorial concepts. *See Commonwealth v. Tolbert*, 670 A.2d 1172, 1185 (Pa.Super. 1995) ("Despite the similarities between conspiratorial culpability and accomplice liability, a jury verdict concluding that an individual

is not a conspirator does not require a concomitant conclusion that the same individual is not an accomplice."). As our Supreme Court explained in **Commonwealth v. Roebuck**, 32 A.3d 613 (Pa. 2011), accomplice liability does not require an intentional promotion of the offense, as the Crimes Code "directs the focus, for result-based elements, to the level of culpability required of a principal." **Id**. at 621.

Third, and lastly, § 306(g) of the Crimes Code codifies that the principal's culpability does not impact that of the accomplice. "An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted." 18 Pa.C.S. § 306(g).

For all these reasons, the conspiracy acquittal does not bind this Court to any specific findings. The remaining question is whether sufficient evidence supported the conviction. As established by the foregoing discussion, Appellant is culpable if he was the principal, *i.e.* he maliciously shot Cortes, or as an accomplice to the unknown male.

We agree with the trial court's assessment that the Commonwealth satisfied either possibility. The video footage supplied an objective account of the circumstances leading to the victim's death. As described by the court, the footage lent itself to only three plausible conclusions: (1) Cortes shot and killed himself; (2) Appellant shot and killed Cortes; or (3) the unknown male

shot and killed Cortes. The first possibility is facially implausible, as the Commonwealth elicited testimony from the responding officers that Cortes did not have any weapon on or near his body, and that the fatal wound was to the back of his head. The jury could thus rationally reject that possibility.

That leaves the second and third possibilities, which implicate different theories of liability. Regardless, either way the evidence sufficed to enable a rational finding by the jury that Appellant either fired the gun or, if he did not, that he was an accomplice to the individual who did. ***See Commonwealth v. Markman***, 916 A.2d 586, 598 (Pa. 2007) (concluding that evidence sufficed to find "guilt as a principal or an accomplice"). We agree with the trial court that the circumstantial evidence established that the two men acted in concert:

> [T]he totality of the circumstances show that the [Appellant] and his companion engaged in some sort of transaction with [Cortes] whereby [Cortes] handed [Appellant] an item which he put to his nose. [Cortes] then walked off but returned after [Appellant] walked behind him and raised his hand in some sort of gesture. The three males then walked off together. Next, there was some physical interaction between the three males, which is difficult to see due to the quality of the video. [Appellant] and his companion then are seen on video leaving the block and [Cortes] is found shot in the back of the head at the location where the three were standing.
>
> Based the totality of the circumstances, there was sufficient evidence to sustain [Appellant]'s third-degree murder charge. Therefore, this claim warrants no relief.

Trial Court Opinion, 6/14/23, at 9.

That Appellant and his companion survived, and Cortes did not, speaks volumes and the footage shows that Cortes interacted with Appellant and the

other male at their prompting. On this point, we agree with the Commonwealth that the jury could have determined that the "transaction" referenced by the trial court was a drug sale. Cortes had marijuana among his personal belongings, which supplies a motive for Appellant and the other male to rob Cortes.[3] The drug sale had ended and Appellant and his companion reengaged Cortes, and the evidence circumstantially suggests that they called to Cortes to summon him back to their location. Cortes was shot shortly thereafter. Finally, the fact that Appellant and his companion did not remain at the scene and evaded arrest is relevant to a finding of malice. "[F]leeing the scene may be considered in determining if an individual acted with malice." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 n.3 (Pa.Super. 2011). The jury could have determined that if Appellant was truly innocent of any wrongdoing that his failure to remain on scene and/or inform the authorities undermines the notion that Appellant had no involvement in the other male's activities. The evidence therefore supports a finding that Appellant either shot Cortes during the encounter or was an accomplice aiding the shooter.

Appellant's second claim challenges the weight of the evidence. "Our standard of review is well-settled. We review the exercise of the trial court's discretion in ruling on the weight claim, not the underlying question of whether

---

[3] The trial court's grant of the motion to acquit Appellant of robbery does not preclude this Court from examining the circumstantial evidence, which, in our view, suggests that Appellant and the other actor, at least one of whom was armed with a firearm, hatched a scheme to rob Cortes.

the verdict is against the weight of the evidence." *Commonwealth v. Biesecker*, 161 A.3d 321, 330 (Pa.Super. 2017). Appellant cites *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976), which holds that a jury cannot return a verdict when the "evidence offered . . . is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture." He maintains that "the Commonwealth's case was solely based on a very grainy and unclear video that was in no way dispositive or certain of any events surrounding the decedent's shooting." Appellant's brief at 33. He argues that "[i]t was a mere 33.3% guess whether the male identified as [Appellant] or the other unidentified male was the shooter or even if the decedent's gunshot wound was self[-]inflicted either accidentally or intentionally." *Id*.

We agree with the Commonwealth that this claim is a repackaging of his sufficiency challenge. The foregoing argument challenges the rationality of the inferences supporting a conclusion that Appellant was the principal or accomplice based on the quality of the evidence offered, which is a sufficiency concept. A *Farquharson* claim by its nature points to contradictory or unreliable testimony by a witness, which naturally calls for an examination of competing evidence. *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) (applying *Farquharson* and finding that "differences in the accounts of [two witnesses] that were contradictory are not sufficient to render their testimony mere conjecture or render it unreliable."). There is no competing evidence to speak of here. Nor is there any suggestion that the

- 15 -

video footage was "unreliable" in the sense of being inauthentic or fabricated. Appellant challenges only whether the objective video footage, some of which clearly depicted Appellant as one of the two men who interacted with Cortes, when paired with circumstantial inferences establishes the elements of the crime, which is a sufficiency concept.

That Appellant is challenging the sufficiency of the evidence under the guise of a weight claim is also borne out by his argument, which reiterates many of his sufficiency arguments. *See* Appellant's brief at 33 ("The jury's verdict does not make legal sense because the jury found [Appellant] not guilty of [c]onspiracy and [the firearms charges].").  The trial court therefore correctly denied Appellant's request for a new trial.[4]

Appellant's third and final point of error asserts that the trial court abused its discretion in permitting Sergeant Slaughter to opine that Appellant was one of the two men shown on the video.  Appellant submits that Pa.R.E. 701, authorizing opinion testimony by lay witnesses, applies only if the testimony is "helpful" to a fact in issue.  Pa.R.E. 701(b).  He avers that this

---

[4] The trial court concluded that the weight claim failed on the merits, explaining that "the footage directly before and after the murder links [Appellant] to the murder as either the principal or accomplice . . . beyond a reasonable doubt.  His face and clothing are clearly visible in the footage preceding the murder, enabling one to follow his movements in an unbroken chain until after the murder."  Trial Court Opinion, 6/14/23, at 11.  In this regard, the trial court determined that the jury's assessment of the video was not "so tenuous, vague, and uncertain that it shocks one's sense of justice such that a new trial is imperative."  *Id.* at 10.  To the extent that Appellant's argument actually implicates the weight of the evidence, we would find no abuse of discretion in the trial court's assessment.

testimony was not helpful because the video from inside the deli clearly depicted Appellant. Additionally, Appellant does not dispute that Sergeant Slaughter was permitted to testify that he identified Appellant from watching the video. His claim is limited to the opinion testimony concerning the video. Appellant's brief at 22 ("Sergeant Slaughter's in[-]court identification of [Appellant] should have been disallowed, as the jury could determine from its own sense impressions whether the person depicted in the surveillance videotape was, in fact, [Appellant].").

This Court has observed that, "[p]ursuant to Pennsylvania Rule of Evidence 104(a), the trial court exercises its discretion to determine whether such a lay opinion is helpful to the factfinder, which is the touchstone of its admissibility." *Commonwealth v. Berry*, 172 A.3d 1, 4 (Pa.Super. 2017). Upon review, we discern no abuse of discretion. This Court addressed a similar issue in *Commonwealth v. Palmer*, 192 A.3d 85 (Pa.Super. 2018). There, the Commonwealth presented surveillance video paired with testimony by a detective, who "'narrated the video' recovered from the deli and 'opine[d] on the similarity and identity of the person seen in each video clip.'" *Id*. at 99 (quoting Palmer's brief). The detective testified, among other points, that he identified Palmer as the man shown on the video after seeing him in the neighborhood the next day. *Id*. We concluded that the testimony was properly admitted under Rule 701 because it "explained the basis for [Palmer]'s arrest, the DNA testing of the drugs, and [Palmer]'s question about what the consequences would be if the shooting were accidental." *Id*. at 101.

- 17 -

The witness's opinion was thus helpful because it placed the investigation into context.

The trial court cited this same theory in explaining why it admitted the evidence in the case at bar. "The investigation of this murder stalled until . . . Sergeant Slaughter came forward identifying [Appellant] as one of the males depicted in the video captured prior to the murder." Trial Court Opinion, 6/14/23, at 12. Thus, as in *Palmer*, the testimony was helpful to the jury because it helped explain the investigation of the case and how Appellant came to be identified. Jurors will naturally wonder what efforts the police took to investigate a homicide, and this testimony helped explain that issue. Additionally, Appellant's claim that the testimony was not helpful because the jury could have simply watched the video without Sergeant Slaughter's corresponding opinion misconstrues "helpful" to mean necessary. Appellant's argument is more that the trial judge should have excluded it on some other unspecified basis. *See Lewis v. Mellor*, 393 A.2d 941, 949 (Pa.Super. 1978) ("If the trial judge decides that the proffered opinion would not be helpful, or even if helpful, would confuse, mislead, or prejudice the jury, or would waste time, he may exclude it.").[5]

---

[5] We add that, even if the trial court erroneously admitted the evidence, Appellant could not show that the error prejudiced him. *Mellor*, *supra* at 949 (holding that reversal for the erroneous admission of testimony under this rule requires actual prejudice). Appellant's concession that the footage clearly depicted him precludes a finding of prejudice.

As we discern no error in the trial court's disposition of Appellant's claims, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/16/2024